## BURNAP v. COOK *et al.*

1. HOMESTEAD: SALE. No conveyance of the homestead, whether by deed or mortgage, is of any validity unless the husband and wife concur therein, and sign the same. Rev., 1860, § 2279; *Alley* v. *Bay*, 9 Iowa, 509; *Yost* v. *Devault*, Id., 60; *Williams* v. *Swetland*, 10 Id., 51; *Larson* v. *Reynolds and Packard*, 13 Id., 579.

2. SAME: PURCHASE-MONEY. The homestead right is subservient to that of the vendor for his unpaid purchase-money. *Christy* v. *Dyer*, 14 Iowa, 438; *Cole* v. *Gill*, Id., 527.

3. SAME: SUBROGATION. M. B. purchased real estate of E. L., executing a mortgage back to secure the purchase-money; after which a portion of the purchased premises were used or occupied as a homestead. M. B., in consideration of assuming the payment of a note on which he was liable as a surety for L. L. to A. L., received a credit on the notes executed to E. L. for the purchase-money. To secure the payment of the note assumed to E. L., a new note was executed for the balance due thereon, and a mortgage on the real estate purchased of E. L., including the homestead, was executed to A. L. by M. B., his wife not concurring therein or signing the same. *Held:*

 1. That A. L. was not in privity with E. L., and was not entitled in equity to be substituted to his rights; that the second mortgage would not be regarded as a security for the payment of the purchase-money.

 2. That as the wife did not concur in the execution of the second mortgage, it was, as to the homestead, of no validity.

4. THE WIFE NOT BOUND WHEN NOT A PARTY. The wife cannot be affected by a decree in a proceeding foreclosing a mortgage of the homestead when she is not a party to such proceeding. (*Larson* v. *Reynolds and Packard*, 13 Iowa, 579.)

*Appeal from Cedar District Court.*

THURSDAY, APRIL 21.

ON the 19th day of December, 1859, the defendant, Wm. L. Cook, claiming to be seised of the *whole* of the S. W. ¼ of section 2, T. 79, R. 4, W., situate in Cedar county, executed to one Van Wyck, as trustee, a deed of trust, conveying to him the above tract of land for the purpose of securing to the plaintiff a promissory note for

$1,130.61. The note remaining unpaid, the plaintiff elected to treat the deed of trust as a mortgage, and filed his petition in the Cedar District Court to foreclose the same, making the debtor, Cook, and one Moses V. Butler, and others, defendants. As to one hundred and twenty acres of this land, no defense was made by any of the defendants. As to forty acres thereof, viz., the S. E. ¼ of said S. W. ¼, the defendant Butler and Emily S. Butler, his wife, defend, and making the proper averments, set up a homestead right which they claim to be paramount to any right or claim of the plaintiff under his deed of trust.

This claim the plaintiff contests upon the ground that Cook's title was derived under circumstances which cut off the alleged homestead right. The cause in the District Court was referred to a Master to report the facts. The facts material to understand the question argued by counsel and decided by the court, are as follows:

"May 21st, 1855, *Ezra* Leland conveyed S. W. ¼—2—79—4 to M. V. Butler. May 21st, 1855, Moses V. Butler and wife, to secure $2,400 purchase-money, gave a mortgage on S. W. ¼—2—79—4, to Ezra Leland. In May and June, 1855, Moses V. Butler went on S. E. ¼ of S. W. ¼ of section 2—79—4, built a woodshed and added a pantry to the house thereon; and about July 1st, 1855, he and his family, then consisting of himself, his wife and four children, moved on said S. E. of S. W., and has ever since resided thereon; that at the time of the purchase and removal thereon, he was a married man; the head of a family, and ever since has been. That said S. E. of S. W. of section 2—79—4, contains forty acres according to government survey, and is not within a town plat, and has been used for the purpose of a home exclusively for himself and family, and that but one dwelling house and barn are thereon.

" That in September, 1855, *Levi* Leland having applied for a divorce from Ann Leland, his wife, and it becoming necessary, either by the order of court or settlement of the parties, the said *Levi* Leland should secure to the said Ann Leland $700, procured Moses V. Butler to sign as security for him notes to that amount, payable to the said Ann; that the said Butler, becoming uneasy, applied to Levi Leland for indemnity against loss by reason of having signed the said notes to the said Ann; that to accomplish this Levi Leland procured the notes given by Butler to Ezra Leland, and Butler received a credit thereon of $700; the notes of Levi Leland and Moses Butler to Ann Leland for $700 were taken up; Butler assumed the payment of the $700 to Ann Leland; paid her $100 in money; then gave his note to Ann Leland for $600; and gave a mortgage to her on S. W. of 2 — 79 — 4, to secure the payment of the $600. Butler's wife did not sign this mortgage. Ann Leland, at the time of taking the mortgage, said to Butler she was willing to take it without his wife's signing it, and Mrs. B. did not sign or concur in the mortgage. That in August, 1857, Butler paid the balance due on the Ezra Leland mortgage; a power of attorney authorizing H. C. Piatt to satisfy the said mortgage, by Ezra Leland, was recorded in the office of the recorder of deeds of Cedar county; an entry of satisfaction appeared on the mortgage record but without any date. July 31st, 1855, Butler mortgaged S. W. ¼ — 2 — 79 — 4, to William Williams, Jr., which was satisfied April 8th, 1856.

" December 19th, 1859, William L. Cook, to secure the payment of $1,130.61 due to G. C. Burnap, December 19th, 1860, conveyed by trust deed to Anthony Van Wyck, the S. W. ¼ of section 2, T. 79, R. 4. The Ezra Leland mortgage was paid off before the foreclosure of the Ann Leland mortgage. The value of the 120 acres of the 160 acres not claimed as a homestead, at the time of the sale, under

the Ann Leland mortgage, was $15 per acre. At the time of the sale, under the Ann Leland mortgage, there were no liens or claims on the S. E. of S. W. of 2—79—4."

The court below, upon these findings, held that the claim of Butler and wife to a homestead right was paramount to the plaintiff's mortgage, and entered a decree of foreclosure, as to the one hundred and twenty acres, and a decree dismissing the petition, as to the forty acres, claimed as a homestead. From this portion of the decree the plaintiff appeals.

*Clarke & Davis* for the appellant, argued that the Ann Leland mortgage was for a portion of the purchase-money, and that, therefore, the homestead right could not affect it. *Swift* v. *Kramer*, 13 Cal., 526; *Carr* v. *Caldwell et al.*, 10 Id., 385; *Lassue* v. *Vance*, 8 Id., 371; *Buvill* v. *Schie*, 9 Id., 107; *Dillon* v. *Byrne*, 5 Id., 455; *Williams* v. *Starr*, 5 Wis., 534; *Smith* v. *Stanly*, 37 Mo., 11; *Symons* v. *Dam*, 31 Verm., 122; *Ladd* v. *Wiggins*, 35 N. H., 421; *Boyd* v. *Beck*, 29 Ala., 703; *Pond* v. *Clarke*, 14 Conn., 334.

*Rush Clark* for the appellees, contended: 1. That the debt to Ezra Leland was extinguished by the execution of the note and mortgage to Ann Leland. Pars. Notes and Bills, note *t;* *Conkling* v. *King*, 6 Seld., 440; Edwards Bills and Notes, 193; Story Prom. Notes, 438. 2. That the taking of a new note and mortgage operated as a waiver of the equitable lien for the purchase-money. *Phelps* v. *Conover*, 25 Ill., 309. 3. The wife not concurring in the mortgage to Ann Leland, it was inoperative as to the homestead. *Williams* v. *Swetland*, 10 Iowa, 51; *Alley* v. *Bay*, 9 Iowa, 509.

DILLON, J.—By recurring to the facts above found, it will be seen. that Butler and wife commenced the occupation of the forty acres in dispute as their homestead, about

July 1st, 1855, and some months antecedent the execution of what is termed the Ann Leland mortgage. It will also be seen that the plaintiff's rights depend upon those of Cook, the trustor in the deed of trust, which is the foundation of the present suit. Cook's title to the homestead forty, is derived under and rests upon the mortgage, which Butler *alone*, without the concurrence of his wife, and at a time when the land in controversy was actually occupied as his homestead, executed to Ann Leland. By the express provision of the statute, no conveyance of the homestead, whether by deed or mortgage, is of *any validity* unless the husband *and wife* concur in and sign the same. Revision, § 2279; *Alley* v. *Bay*, 9 Iowa, 509; *Yost* v. *Devault*, Id., 60; *Williams* v. *Swetland*, 10 Id., 51; *Larson* v. *Reynolds and Packard*, 13 Id., 579.

It is plain, therefore, that the homestead right as to the forty acres in which it is claimed, was in no wise affected by the Ann Leland mortgage, unless it shall be found that the debt to Ann Leland was for the purchase-money, or if not, that it is in equity to be considered as standing in the place of, or as being invested with the attributes of a purchase-money debt. It is settled that the homestead right is subordinate to the right of the vendor for his unpaid purchase-money. *Christy* v. *Dyer*, 14 Iowa, 438; *Cole* v. *Gill*, Id., 527; 1 Am. Law Reg. (N. S.), 715, and cases cited.

And the appellant's counsel, in the very thorough and carefully prepared argument which they have submitted, place their claim for a reversal of the decree, so far as it exempts the homestead forty from liability to the plaintiff's debt, expressly on the ground, "that the Ann Leland mortgage was for a portion of the purchase-money, and therefore the homestead right could not affect it. Or stated in other terms, they insist, under the facts reported by the referee, that Ann Leland, by virtue of her mortgage, was the equitable assignee to that extent, of Ezra Leland, the vendor of

Butler, and as such assignee, she ought to stand in his place and be clothed with all his rights. In support of this position, we are referred to *Swift* v. *Kramer*, 13 Cal., 526; *Carr* v. *Caldwell*, 10 Id., 385; and *Lassen* v. *Vance*, 8 Id., 271. As these cases are relied on with so much confidence by the plaintiff, it is proper briefly to notice them. *Swift* v. *Kramer*, *supra*, was where a prior valid mortgage existed upon the premises, at and before the time they became a homestead, and where a new mortgage was afterwards executed by the husband alone, to a person who paid off the first mortgage and caused it to be released, the release of the old and the execution of the new mortgage being on the same day, that is, being *contemporaneous acts*, and it was held, that such new mortgage, being in equity treated as an *assignment* of the first mortgage, was valid, though the wife did not join therein.

In *Carr* v. *Caldwell*, above cited, the homestead premises were about to be sold on a decree for the purchase-money, whereupon the husband borrowed of a third person (Carr) money to satisfy the decree, and which was actually applied for that purpose. At the same time, and as part of the same transaction, the husband alone executed a mortgage of the premises, and this was adjudged valid. *Lassen* v. *Vance*, *supra*, was in substance this: The husband who resided on the place as a tenant, purchased the same, and to enable him to do so, borrowed the *whole* purchase-money from *another* person, and without his wife joining, executed a mortgage to secure the money thus borrowed, simultaneously with his receiving a deed, and the homestead right was held to be subordinate to the rights of the mortgagee.

Now, without denying, or even calling in question, the correctness of these decisions upon the facts of the respective cases in which they were made, it seems to us that the present case is, in several important respects, clearly

distinguishable from them. We do not understand those cases to lay down the broad and unqualified proposition, that a man who advances money to a debtor to pay off a prior debt, is, irrespective of the intentions and without regard to the equities of the parties, entitled to all the rights of the creditor thus paid off.

For example : Would a person, advancing money in this State, upon mortgage, since the appraisement law, to a debtor, to enable him to pay off a mortgage made before that law was enacted, be entitled, as a matter of legal right, to claim that as the mortgage, which he loaned money to cancel, was exempt from the effect of that statute, that therefore his mortgage, though made since the passage of that law, would likewise stand free from its operation? As a *rule*, this question would have to be negatively answered. In applying the doctrine of subrogation, equity will do it so as to carry out, rather than contravene, the actual or imputed intentions of the parties, and so as to advance substantial justice. In the case at bar, Ezra Leland held the notes of Butler for $2,400, given for the purchase of the quarter section of land. While he so held them, Butler became bound as surety for one Levi Leland, to Ann Leland, for $700. This debt to Ann arose out of a transaction wholly independent of the purchase of the land. The liability of Butler to both Ezra Leland and Ann Leland co-existed for some time. In other words, Butler became bound to Ann Leland as surety sometime before she received her mortgage from him.

In this respect this case differs, in a most essential particular, from the California cases above cited; for in all of those cases, it is a fact much insisted upon in the opinions, that the creation of one liability to pay the other, and the actual payment of the other, were concurrent acts, parts of one and the same transaction. It does not appear, except, perhaps, inferentially, that the execution of the Ann Le-

land mortgage, by Butler, was even simultaneous, with his assumption of the debt, as principal.

The facts show that Butler, becoming uneasy with reference to his suretyship, applied to his principal (Levi Leland), for indemnity; and thereupon Levi, and not Ann Leland, made an arrangement with Ezra, by which he indorsed $700 on the purchase-money notes of Butler, and the latter assumed the payment of a like amount to Ann; and to secure her, he alone executed (she being "willing to take it without his wife's signing it") the mortgage under which Cook afterwards obtained his title. It does not appear what the consideration was, which passed from Levi to Ezra, at the time the latter made the indorsement of $700, nor is it, perhaps, material. How, under this state of facts, could Ann claim to be the assignee of a portion of the purchase-money, or of the vendor's rights? What were Ezra's rights as vendor? He had an *express* mortgage for the whole of his unpaid purchase-money; and this would probably be held, except in very special circumstances, to merge or waive any *implied* lien, which he would otherwise have. *Little* v. *Brown*, 2 Leigh., 353, 355; *Harris* v. *Harland*, 14 Ind., 439.

The taking by the original vendor, or by one standing in his place, of a new mortgage, might not amount to a waiver of the implied lien, if there existed equitable reasons for preserving it, as in *Boose* v. *Ewing*, 17 Ohio, 500. And see *Dillon* v. *Byrne*, 5 Cal., 445; *Barnes* v. *Gay*, 7 Iowa, 26. And yet even the vendor himself may waive his right, so as to leave the homestead right paramount. See on this point, *Phelps* v. *Conover*, 25 Ill., 309; Sugd. on Ven. and Pur., chap. 18.

No facts are shown in this case why Ezra Leland should not be considered as having waived his implied lien as vendor by accepting a mortgage security.

It would, therefore, be proper to conclude that Ezra Leland had the precise rights which his express mortgage gave him, no reasons or equity being shown why he should have any other or greater rights.

And the assignment of the notes secured thereby would entitle the assignee to the benefit of the mortgage. But Ezra made no assignment of his notes or any part thereof. If he had they would probably have been assigned to Levi with whom he contracted, and not to Ann Leland, with whom he did not contract. We do not see that Ezra did anything which, by any fair process of reasoning, can be construed into an assignment in favor of Ann. Suppose the balance of his debt of $2,400 had never been paid, can it be maintained that Ann Leland would be entitled as his assignee, to have her $700 share in the security of the first mortgage? We think not. And in this particular the case is different from those in California. Ezra Leland had no transaction with Ann. She is not in privity with him. Her debt against Levi had in its inception no relation whatever, and in its history only an accidental connection with the purchase of the land by Butler of Ezra. They are substantially disconnected transactions. Her rights were intended to be just those which her express mortgage would give her. Her attention seemed to have been challenged to the rights of Mrs. Butler, and she was willing to, and in fact did take a mortgage in which Mrs. Butler did not join. This mortgage was valid as to one hundred and twenty acres, and would have been valid as to the remaining forty, had it not at that time and for some months before, been the homestead of her mortgagor and his family.

Her debt was no portion of the purchase-money, but had an entirely different origin. She was not the assignee of the vendor in fact, nor has it been shown that she has any claim to be so considered in law or in equity. She

took her mortgage subject to the unpaid residue of the first mortgage, and subject to any rights of Mrs. Butler, and it only executes the intention of all parties to hold that it shall remain subject to those rights.

It follows then, that the mortgage to Ann Leland was, as to the homestead forty, of no validity whatever, by reason of the nonjoinder of Mrs. Butler.

As she is not shown to have been a party to its subsequent foreclosure, the decree and sale thereunder were inoperative as to her, and conveyed no title to the homestead premises to Cook, and consequently he could convey none to the plaintiff. Mrs. Butler cannot be affected by any decree to which she was not made a party. *Larson* v. *Reynolds and Packard,* 13 Iowa, 579; *Wisner* v. *Farnham,* 2 Mich., 472; *Revalk* v. *Kramer,* 8 Cal., 66; *Tadlock* v. *Eccles,* 20 Texas, 782; 1 Am. Law Register (N. S.), 710.

The decree of the Court below was right, and it is, therefore,

Affirmed.