THOMAS BARTON & wife *vs*. ELIAS F. DRAKE.

Jan. 11, 1875.

**The Homestead Law, § 1, is Constitutional.**—The first section of the act entitled "Homestead Exemption," (Gen. Stat., ch. 68, re-enacting Laws 1858, ch. 35,) which provides for a homestead, limited in area but not in value, is constitutional. *Cogel* v. *Mickow*, 11 Minn. 475, followed.

**Same—§ 2 is Constitutional.**—The second section of the same act, which provides that a mortgage or other alienation of a homestead by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same, is in itself constitutional, and is embraced within the subject expressed in the title of the act.

**Selection of Homestead.**—When the owner of a tract or lot, within the statutory limit of a homestead, actually occupies the same as his sole place of residence, such lot or tract becomes his homestead, without further selection.

**Homestead Law, § 2, Not Repealed.**—The act of March 10, 1860, (Laws 1860, ch. 95; Gen. Stat., p. 499,) authorizing the owner of a homestead to sell the same or remove therefrom, does not repeal § 2, ch. 35, Laws 1858, (re-enacted in Gen. Stat., ch. 68, §2.)

**Conveyance, etc., of Homestead by Married Man, without his Wife's Signature.**— A conveyance of his homestead by a married man, without his wife's signature to the same, is void; a contract to convey his homestead, made by the husband alone, without his wife's signature, does not bind the land, and can not be specifically enforced, since a judgment for the specific performance of such a contract, rendered in an action against the husband alone, can have no greater effect than the deed of the husband alone. Such conveyance, contract or judgment is not rendered valid by the circumstance that the premises therein described subsequently lose their character of a homestead.

**Final Judgment—Cloud on Title to Homestead.**—B, a married man, owning and occupying a homestead of 45 1-2 acres, contracted to convey the same to D, with 19 lots, comprising about 5 acres, adjacent thereto, his wife not signing the contract. D brought suit and recovered judgment for specific performance against B alone, no claim being made by him that the 45 1-2 acres were a homestead. The judgment provided that unless B should, within 30 days after service of such judgment upon him, have ready for delivery the deed therein directed to be executed by him, he should be deemed to be in default, and that upon such default, the judgment should become a lien upon the land. B and wife having brought this action in the same court to set aside the judgment and the lien thereof, so far as it related to the 45 1-2 acres, *Held*, that the judgment was a final judgment; that although no copy of the judgment had been served on B, the existence of the judgment, which was valid and regular on its face, and whose invalidity could only be shown by extrinsic evidence of the occupancy of the 45 1-2 acres as a homestead at the time the contract was made, created a cloud upon B's title, to remove which this action would lie; and that any equities D might have against B, growing out of the setting aside of the judgment as to the 45 1-2 acres, would be more properly adjusted in the suit of D against B, than in this action.

On February 10, 1870, the plaintiff Thomas Barton was the owner of the southeast quarter, southwest quarter, section 11, T. 28, R. 23, containing forty acres, and also of five and one-half acres in section 14, adjoining the former tract on the west. For five years prior to that date, Barton, with his wife (co-plaintiff in this action) and family, had resided on this land, and continue so to reside. Barton also owned nineteen lots in Cottage Lots Addition to St. Paul, according to the recorded plat, comprising about five acres, and enclosed with a portion of the forty acres within one fence. During all this time, Barton had no other residence, and owned no other land in this state.

On February 10, 1870, Barton, through an agent appointed in writing, entered into a written contract with Drake for the sale and conveyance of all the lands above mentioned; but his wife had no part in the transaction, and did not sign the written authority to the agent. Barton having refused to perform the contract, Drake brought suit against him in the court of common pleas for Ramsey county for a specific performance, Mrs. Barton not being made a party to the suit. The only fact in controversy in that

action was the agent's authority to make the contract, and on November 2, 1871, Drake had judgment that Barton convey the premises to him, within thirty days after service of a copy of the judgment, and upon compliance by Drake with the directions of the judgment, as to payments, etc. The judgment further provided that, upon such compliance by Drake, he should be entitled to possession, and to the process of the court to obtain it; that unless Barton should, within thirty days after service of a copy of the judgment upon him, stand ready and willing to convey, he should be deemed to be in default, and to have refused to comply with the judgment; and that in case of such default or refusal on Barton's part, the judgment should be a lien on the premises, until he should comply with its provisions, or until the further order of the court.

On February 29, 1872, the limits of the city of St. Paul were so extended as to include all the land above described, except the five and one-half acres.

In March, 1873, Barton and wife brought this action in the same court, alleging that the written authorization to the agent, the contract, and the judgment are void, for the reason that the land was Barton's homestead, and his wife did not sign either the contract or the authorization; that all of them—and particularly the judgment—form a cloud on their title to the land, and impair its value; and that Drake threatens to institute proceedings under the judgment to disturb their possession. Judgment is demanded that the two written instruments and the judgment be adjudged to be void, and to form no lien on the lands, and for general relief. The action was tried before *Hall*, J., who found the facts as above stated, and ordered judgment in accordance with the prayer of the complaint, except as to the nineteen lots. Judgment was entered accordingly, and defendant appealed.

*E. C. Palmer*, for appellant.

*Lyman C. Dayton* and *Gilman, Clough & Lane*, for respondents.

YOUNG, J. It is contended that at the time of the mak-

ing of the contract with Drake, for the specific performance of which the suit of *Drake* v. *Barton* was brought, and at the time of the rendition of the judgment in that action, the 45 1-2 acres, as to which it is now sought to set aside that judgment, and discharge its lien, were not the *homestead* of the plaintiff Barton, within the meaning of Gen. Stat., ch. 68, § 1, for the reason that no specific property had been selected by him as a homestead. But this tract was within the statutory limit (80 acres) of the quantity of land which may be held as a homestead, and Barton, with his family, had for many years actually resided, and then resided upon it; and during all this time, he had no other residence in this state. By occupying this land as his homestead, *i. e.*, as his dwelling-place, (*Kelly* v. *Baker*, 10 Minn. 154,) Barton made the only selection he could make, or could under the statute be required to make, in a case where the tract occupied as a residence, and claimed as a homestead, is less than the amount allowed by statute. *Beecher* v. *Baldy*, 7 Mich. 488, decided under a constitutional provision in this respect identical with our statute, is direct authority, (if authority were needed,) in support of this conclusion. And see *Thomas* v. *Dodge*, 8 Mich. 51.

It is further insisted that the homestead law itself is unconstitutional, and several grounds are stated by the defendant's counsel in support of this proposition. The learned counsel has doubtless taken this position in good faith, relying on the soundness of the arguments by which he seeks to sustain it. Were this a new question, we should, in accordance with our usual custom, state the reasons which lead us to the conclusion that the position is wholly untenable, and the arguments radically unsound. But this statute was originally enacted at the first session of the state legislature, (Laws 1858, ch. 35,) in obedience to an express mandate of the constitution, art. 1, § 12. It has stood unchanged upon the statute book during almost the entire period of the existence of Minnesota as a state. Its validity has been tacitly assumed in repeated decisions of this court,

and was expressly affirmed, after argument and consideration, in the case of *Cogel* v. *Mickow*, 11 Minn. 475. It is true that some of the grounds of objection now urged do not seem to have been presented to the court in that case; but even if we had any doubt of the validity of the law, as against these objections, we should refuse to entertain a question, which, since the judgment in *Cogel* v. *Mickow*, ought to be considered as laid at rest forever. To treat this question as open, and decide it as *res integra*, would be to admit the possibility of a future overruling, not only of *Cogel* v. *Mickow*, but of other cases in which statutes embodying the settled policy of the state, in matters of great public concern affecting the entire community, have been solemnly adjudged to be valid; decisions which have been acquiesced in and acted upon for many years, and have become rules of property, to question which is to throw a cloud on innumerable titles. Such decisions are and ought to be absolutely final.

The second section of the Homestead Act, (Gen. Stat., ch. 68,) provides that any "mortgage or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same," etc. It is objected that this section is not germane to the subject of the act, which is, to provide for the exemption of a homestead from seizure and sale on execution or other process; and that, in respect of this section, the act is repugnant to § 27, art. 4, of the constitution, which provides that "no law shall embrace more than one subject, which shall be expressed in its title." But ch. 68, Gen. Stat., is identical with the law of 1858 before referred to, except that the original act contained additional provisions relating to the exemption of personal property, and in *Tuttle* v. *Strout*, 7 Minn. 465, the act of 1858 was held to be not open to objection on this ground. And we think it clear that it is entirely competent for the legislature, (in the absence of any constitutional restriction,) to prohibit the alienation of a homestead by a husband, without the wife's signature to

the deed, (*Barker* v. *Dayton*, 28 Wis. 367,) and that such a restriction upon the alienation of the homestead finds its natural and appropriate place in the statute entitled "Homestead Exemption," which authorizes the exemption of a homestead, and regulates the mode in which such homestead may be acquired and enjoyed.

The act of March 10, 1860, (Laws 1860, ch. 95,) in terms amendatory of the act of 1858, provides that "the owner of a homestead   *   *   *   may remove therefrom, or sell and convey the same, and such removal or sale and conveyance shall not render such homestead liable to forced sale on execution   *   *   *   on any judgment,   *   *   *   nor shall any judgment   *   *   be a lien on any such homestead for any purpose whatever." In *Folsom* v. *Carli*, 5 Minn. 338, it was held that, under the law of 1858, the lien of a judgment would attach to a homestead, and that the exemption of the homestead was only an exemption from sale on execution during the occupancy of the debtor and his family. The evident and sole object of the act of 1860 was to empower the debtor to remove from or convey his homestead, without rendering it liable to sale on execution. The act is entirely consistent with section two of the act of 1858, and should not be construed as a repeal of that section by implication, a mode of repeal not favored in the law. The effect of section two is not merely to render an alienation of the homestead, by the husband alone, invalid as against the wife, or invalid except as against the husband. Had such been the intent of the legislature, the general and emphatic words used would have been qualified accordingly. The plain meaning of the section is that a mortgage or other alienation of the homestead by the husband, without the wife's signature, is wholly void ; and to this effect are the following cases, construing similar restrictions upon the alienation of homesteads. *Richards* v. *Chase*, 2 Gray, 383 ; *Phillips* v. *Stauch*, 20 Mich. 369 ; *Beecher* v. *Baldy*, 7 Mich. 488 ; *Dye* v. *Mann*, 10 Mich. 291 ; *Williams* v. *Starr*, 5 Wis. 534 ; *Phelps* v. *Rooney*, 9 Wis. 70 ; *Alley* v. *Bay*, 9 Iowa, 509 ;

*Larson* v. *Reynolds*, 13 Iowa, 579; *Burnap* v. *Cook*, 16 Iowa, 149.

A contract to convey, made by a husband alone, can have no better claim to validity than a conveyance. Aside from the rule in equity by which such a contract is held to be equivalent to a conveyance of the equitable title, it seems clear that as a conveyance by the husband in performance of the contract would be void, and would pass no title, the contract to make such void conveyance must be ineffectual to bind the land. It would be strange if a purchaser could take anything more, under a contract for a deed, than would pass by the deed itself. See *Yost* v. *Devault*, 9 Iowa, 60; *Phillips* v. *Stauch*, 20 Mich. 369.

And so of the judgment for specific performance of such a contract. As the conveyance directed by the judgment in *Drake* v. *Barton* would have been void, under the statute, as to the 45 1-2 acres forming the homestead, it must be that a judgment requiring the contract to be performed, by the execution of such void conveyance, cannot be a valid lien on the homestead. Even where, by § 14, ch. 75, Gen. Stat., a judgment may pass the title, and stand as a conveyance of the estate of the defendant, it has no greater effect than the deed of the defendant.

After the rendition of the judgment in *Drake* v. *Barton*, and before this suit was brought, the limits of the city of Saint Paul were so extended, (by Sp. Laws 1872, p. 17,) as to include all the land now in question, except the 5 1-2 acres adjoining the S E 1-4, S W 1-4, sec. 11. It is contended that after such extension, Barton was not entitled to hold as exempt a greater quantity than one lot, and this is conceded by the plaintiffs' counsel. The counsel for neither party has undertaken to define the quantity of land of which such "lot" would consist, and it is unnecessary to determine this at this time.

The 45 1-2 acres being a homestead when the contract was made, and the contract and decree being alike void, the defendant acquired by them no title to, or estate in, or lien

20

upon, such homestead; but the title to the same has always continued to be in Barton.

In the suit of *Drake* v. *Barton*, the latter did not plead that the 45 1-2 acres were a homestead, and none of the questions now raised were then before the court. See 18 Minn. 462. It is contended, however, that the judgment in *Drake* v. *Barton*, if final, cannot be impeached by an original suit, except for fraud. But the estoppel of a judgment directing a conveyance is no more conclusive than the deed of the defendant would be. To permit either the deed or the judgment to have the operation and effect contended for would be to render valid, by way of estoppel, an alienation which the statute says shall not be valid.

The defendant's counsel makes the further point that the judgment in *Drake* v. *Barton* was not a final judgment, and therefore cannot be made the subject of an independent action in the same court. Our statute, (Gen. Stat. ch. 66, § 250,) does not recognize interlocutory judgments, and provides for but one judgment in an action, which "shall be entered in the judgment book, and specify clearly the relief granted, or other *determination* of the action," and which must be, in its nature, a final judgment. Such is the character of the judgment in *Drake* v. *Barton*, which is, in its nature, a final determination of the rights of the parties, and would be a final decree according to the well settled rules of practice in courts of chancery. 2 Dan. Ch. Pr; 3d Am. Ed., 1009, 1010 and note.

The judgment in *Drake* v. *Barton* provides that, unless Barton shall, within thirty days after the service of a copy thereof upon him, have ready for delivery the deed therein directed to be executed, he shall be deemed to be in default; and upon such default, the judgment shall become a lien, etc. It is contended that, as the plaintiffs are in possession, they cannot be injured by the decree; that whatever homestead claim they may have would be available at law as a defence to any attempt to disturb their possession. But as the judgment and proceedings are regular and valid upon

their face, and as the lien provided for by the judgment is, although void, an apparently valid lien on the estate of Barton in the 45 1-2 acres, and its invalidity can only be proved by extrinsic evidence of the occupancy of the premises as a homestead at the date of the contract, the plaintiffs have a clear right to invoke the aid of a court of equity to remove the cloud which such judgment and lien cast upon Barton's title to the homestead estate.

Nor are the plaintiffs required to wait until, by service of a copy of the judgment, and the lapse of thirty days, Barton is in default. True, the judgment does not provide that it shall become a lien, until such default; but the defendant may at any time serve such copy, and cause the judgment to become a lien within thirty days thereafter. He may do this at once, or he may bide his time. If he purposes to wait, without attempting at present to enforce his judgment, it is likely to become, as time elapses, more and more difficult, and perhaps impossible, for the plaintiffs or their grantees to prove, when the defendant at length sees fit to serve a copy of the judgment, the extrinsic facts, resting in parol, which show the invalidity of the lien it purports to create upon the homestead estate. Such a judgment, from the time of its entry, must of necessity impair the value, certainly the market value, of the plaintiffs' interest in the land to which it relates. Assuming it to be valid, will it be contended that Barton's estate in the land, (we have nothing to do with the value of his claim for the purchase money to be paid by Drake,) would have any salable value at all? A judgment which, while it stands, thus affects the estate to which Barton is clearly entitled in the 45 1-2 acres, is certainly a cloud on his title to that estate, and for the removal of that cloud the plaintiffs may properly ask the aid of a court of equity, Mrs. Barton being a proper party plaintiff in respect of her interest in the homestead, (whatever be its extent,) still existing in the 45 1-2 acres. See *Conkey* v. *Dike*, 17 Minn. 457, and cases cited.

It is urged that the judgment appealed from is erroneous,

in that it merely avoids the former judgment as to 45 1-2 acres of the land therein directed to be conveyed, and does not attempt a re-adjustment of rights or equities, or to preserve anything secured to Drake under the first decree. But these equities, whatever they may be, subsist against Barton alone, and not against Mrs. Barton, who was not a party to the contract, or to the suit brought to enforce it, and they would more properly be adjusted by appropriate proceedings in the suit of *Drake* v. *Barton*.

Judgment affirmed.