In re Mark Eugene HAGGERTY and
Linda Jean Haggerty, Debtors.

No. C0–89–821.

Supreme Court of Minnesota.

Dec. 1, 1989.

Hubert H. Humphrey, III, Atty. Gen., Scott R. Strand, Asst. Atty. Gen., St. Paul, for appellant.

Edward W. Bergquist, Minneapolis, for respondent.

William J. Coughlin, Minneapolis, for debtors.

POPOVICH, Chief Justice.

The debtors filed a Chapter 7 bankruptcy petition and claimed their homestead as exempt from creditors pursuant to Minn. Stat. §§ 510.01–510.02 (1988). The bankruptcy trustee objected, contending the Minnesota homestead exemption is unconstitutional under Minn. Const. art. 1, § 12, and *In re Tveten,* 402 N.W.2d 551 (Minn. 1987), because it has only area limits but no value or dollar limit. The en banc United States Bankruptcy Court, District of Minnesota, certified to us the following question of state law:

Are Minn.Stat. §§ 510.01 and 510.02 unconstitutional as violative of Article 1, § 12, of the Minnesota Constitution?

We answer the certified question in the negative.

I.

On January 10, 1989, the debtors, Mark and Linda Haggerty, husband and wife, filed a petition for relief under Chapter 7 of the U.S. Bankruptcy Code. The Code permits a debtor to shield from the bankruptcy estate available for distribution to creditors, property either exempt under the Code or under "[s]tate or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile [is] located." 11 U.S.C. § 522(b)(2)(A) (1982). The debtors chose Minnesota law for their exemptions. Among their claimed exemptions the debtors included their homestead, located on

a .22 acre lot in New Hope, Minnesota (an urban area), pursuant to Minn.Stat. §§ 510.01–510.02. In their exemption schedules the debtors valued their unencumbered homestead at $139,000; the Hennepin County Assessor estimated the 1989 market value at $112,700.

The bankruptcy trustee, on February 21, 1989, objected to the debtors' claimed homestead exemption. The trustee conceded the statutory requirements for the homestead exemption had been met, but contended the Minnesota homestead exemption was unconstitutional under Minn. Const. art. 1, § 12, and *Tveten* because the statutes failed to limit the exemption to a "reasonable amount." The Attorney General of the State of Minnesota, who intervened pursuant to 28 U.S.C. § 2403(b) (1982) and Fed.R.Civ.P. 24(a) to defend the constitutionality of the homestead statutes, requested the issue be certified to this court. On May 4, 1989, the U.S. Bankruptcy Court, District of Minnesota, sitting en banc, certified to us the above question of state law, pursuant to Minn.Stat. § 480.061, subd. 1 (1988).

## II.

Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary. *City of Richfield v. Local No. 1215*, 276 N.W.2d 42, 45 (Minn. 1979). The party challenging a statute has the burden of demonstrating beyond a reasonable doubt a violation of some provision of the Minnesota Constitution. *McGuire v. C & L Restaurant, Inc.*, 346 N.W.2d 605, 611 (Minn.1984).

It was originally proposed that the Minnesota Constitution contain a home-stead exemption with a specific dollar limit, *Minnesota Convention Debates* 99 (1857) (debates of July 24, 1857), but it was determined the constitution should not contain perfect or specific laws. Since its adoption in 1857, the Minnesota Constitution has empowered the legislature to determine what property is exempt from creditors, but has imposed a "reasonable amount" limit on any legislated exemption:

A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law.

Minn. Const. art. 1, § 12. Thus, the area homestead exemption is a "creature of statute." *Dimke v. Finke*, 209 Minn. 29, 38, 295 N.W. 75, 81 (1940). In 1858, the first Minnesota legislature enacted a homestead exemption shielding 80 acres from creditors. Act of August 12, 1858, ch. 35, § 1, 1858 Minn.Laws 12. The homestead exemption has been exclusively area limited since 1858, although the area's size has changed several times, most recently in 1986. Act of March 21, 1986, ch. 398, art. 16, § 1, 1986 Minn.Laws 400, 467. The challenged statutes [1] currently limit the homestead exemption to one-half acre in platted areas or 160 acres in unplatted areas. Minn.Stat. § 510.02.

This court has previously addressed challenges to the homestead exemption under Minn. Const. art. 1, § 12. The leading case, *Cogel v. Mickow*, 11 Minn. 475 (Gil. 354) (1866), was decided only nine years after the Minnesota Constitution was adopted and eight years after enactment of the homestead exemption. In *Cogel*, this court first addressed a challenge to the homestead exemption under article 1, section 12, and held the exemption was consti-

---

1. 510.01 HOMESTEAD DEFINED; EXEMPT; EXCEPTION.

The house owned and occupied by a debtor as the debtor's dwelling place together with the land upon which it is situated to the amount hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants.

510.02 AREA, HOW LIMITED.

The homestead may include any quantity of land not exceeding 160 acres, and not included in the laid out or platted portion of any city. If it be within the laid out or platted portion of such place its area shall not exceed one-half of an acre.

tutional because either an area or value limit was a reasonable "amount." *Id.* at ___ (Gil. at 356). The court later confirmed the first legislature enacted the homestead statute "in obedience to an express mandate of the constitution, art. 1, § 12." *Barton v. Drake,* 21 Minn. 299, 302 (1875). Relying on stare decisis, the *Barton* court concluded the constitutionality of the homestead exemption "since the judgment in *Cogel v. Mickow,* ought to be considered as *laid at rest forever." Id.* at 303 (emphasis added). Thus, in both of these cases, which obviously were decided with a better perspective on the meaning and policies behind the constitutional limit and the homestead exemption, we upheld Minnesota's homestead area exemption. The trustee argues *Cogel* and *Barton* are distinguishable because they involved rural (or unplatted) homesteads, but these interpretations undeniably apply to the question before us.

Although we have not directly addressed the constitutionality of the homestead exemption since 1875, we have acknowledged numerous times the continued vitality of *Cogel* and *Barton. E.g., Title Ins. Co. v. Agora Leases, Inc.,* 320 N.W.2d 884, 885 (Minn.1982) ("In *Cogel v. Mickow,* we rejected the argument that, constitutionally, the homestead must be measured by value rather than area."); *How v. How,* 59 Minn. 415, 419, 61 N.W. 456, 457 (1894) ("[T]he statute limiting the homestead exemption by area alone is valid * * * there is a limit, and a natural and proper one as far as it goes."); *see also In re Johnson,* 880 F.2d 78, 82–83 (8th Cir.1989) (noting Minnesota homestead exemption constitutional), *reh'g denied* (Aug. 16, 1989). Absent overwhelming evidence to the contrary, we are compelled to reaffirm 123 years of consistent and indisputable interpretation of the constitutionality of the Minnesota homestead exemption.

This court's recent dispositive decision— and the case that apparently caused this question to be certified—on the "reasonable amount" constitutional limit on exemptions is *In re Tveten,* 402 N.W.2d 551 (Minn.1987).[2] In *Tveten,* four questions were certified by a bankruptcy judge to this court. The first three questions concerned whether the requirements for the fraternal benefits exemption were met and whether pre-bankruptcy planning is permissible, all of which we answered affirmatively. *Id.* at 553–56. The fourth question was: "Are Minn.Stat. §§ 550.37, subd. 11, and 64B.18 unconstitutional as violative of article 1, section 12 * * * of the Minnesota Constitution?" *Id.* at 552–53. The challenged statutes granted an unlimited exemption for annuities and unmatured life insurance policies issued by a fraternal benefit society, whereas annuities and insurance policies were only partly exempt when issued by a for-profit insurance company. We unanimously found these statutes unconstitutional because they failed to limit this exemption to a "reasonable amount" as required by Minn. Const. art. 1, § 12. *Id.* at 558. Relying on *How,* 59 Minn. at 419, 61 N.W. at 457, which had declared an unlimited insurance proceeds exemption unconstitutional, we reasoned that:

> Adoption of Tveten's contention that the constitutional limitation on "reasonable amount" is satisfied by a mere designation of types of property, as *How I* demonstrated, would allow legislatures to exempt all kinds of monetary and other accounts without regard to the value of those accounts. Certainly, such a result was beyond the intention of the framers of article 1, section 12 of the Constitution. When determining whether annuities or unmatured life insurance are exempt from creditor's levy by being a "reasonable amount," by necessity "reasonable amount" must be synonymous with "reasonable value."

---

**2.** There were four *Tveten* decisions in all: *In re Tveten,* 70 B.R. 529, 534–35 (Bankr.D.Minn. 1987) (held debtor intended to defraud creditors by converting liquid investments into exempt assets, thus discharge denied); *In re Tveten,* 82 B.R. 95, 97 (Bankr.D.Minn.1987) (affirmed denial of discharge); *Norwest Bank Neb. v. Tveten,* 848 F.2d 871, 876 (8th Cir.), *reh'g denied,* (Aug. 9, 1988) (affirmed debtor's intent to defraud: "he did not want a mere *fresh* start, he wanted a *head* start") (emphasis in original) (citation omitted).

However, it does not follow that just because the "reasonable amount" language of the constitution requires some value limitation, that it requires a specific value limit. 402 N.W.2d at 558. In addition, we emphasized the need for an exemption to be based on some objective criteria. *Id.*

Relying on principles enunciated in *Tveten,* three bankruptcy court decisions have ruled other Minnesota exemptions unconstitutional for failing to provide any limit. *In re Netz,* 91 B.R. 503, 504–05 (Bankr.D. Minn.1988) (unlimited exemption of stock bonuses, pensions, profit-sharing plans, or annuities unconstitutional); *In re Bailey,* 84 B.R. 608, 610–12 (Bankr.D.Minn.1988) (unlimited personal injury right of action exemption unconstitutional for special damages; exemption of general damages never unreasonable); *In re Hilary,* 76 B.R. 683, 686 (Bankr.D.Minn.1987) (family musical instrument exemption unconstitutional for failing to provide any objective limit).

The answer to the certified question turns on how we read "reasonable amount" as found in article 1, section 12 of the constitution. *See Tveten,* 402 N.W.2d at 556. "Amount" can reasonably be defined to mean either value or quantity, or both. *See Webster's New Collegiate Dictionary* 38 (1976). Several of our cases have interpreted the "reasonable amount" provision. *Cogel,* decided only nine years after the adoption of the Minnesota Constitution, is the most authoritative. Under article 1, section 12, the *Cogel* court held:

> The *amount* of a person's real property, according to the ordinary use and signification of language, is as often measured by its area as by its cash value, and we see nothing in the constitution to justify us in holding that the legislature in designating the amount of homestead exemption, is precluded from adopting either mode of admeasurement.

11 Minn. at ___ (Gil. at 356) (emphasis in original). An 1894 case stated:

> All other exemption laws in this state which have come to our notice measure the amount of the exemption by the number, quantity, or value of the thing or

things exempt. * * * But in the case at bar there is no certain or proper measure of any kind.

*How,* 59 Minn. at 419, 61 N.W. at 457. Obviously, these courts had a better idea of the framers' intent than we do reexamining the issue today. Thus, we have interpreted the constitutional provision as permitting either an area- or value-based limit.

Under *Tveten* and the bankruptcy court decisions, the two extremes for determining the constitutionality of an exemption are clear. If an exemption has no limit of any kind, then it is unconstitutional. On the other hand, an exemption with a dollar, an objective, or a statutory "to the extent reasonably necessary" limit is a proper legislative determination of reasonableness. Because the homestead exemption does not contain a dollar limit or a statutory "reasonable" limit, the certified question raises whether an area (or quantity) limit provides a sufficiently objective standard. In light of *Cogel* and *Barton* and the above interpretations of "amount" to include quantity, we hold and reaffirm that area (or quantity for tangible property) limits are objective criteria limiting the homestead exemption to a reasonable amount.

In making this decision we are mindful of the deference to be given a legislative determination of what is a reasonable amount of exempt property. *See Tveten,* 848 F.2d at 878–79 (Arnold, J., dissenting); *In re Johnson,* 80 B.R. 953, 963 (Bankr.D. Minn.1987), *aff'd,* 101 B.R. 997 (D.Minn. 1988), *aff'd,* 880 F.2d 78 (8th Cir.1989). In *Jacoby v. Parkland Distilling Co.,* we said:

> Neither can the questions of the value of the premises * * * be at all important, so long as the premises are in area within the limit of the exemption fixed by law. Unfortunately our statute fixes no limit as to value upon a homestead exemption. It must be confessed that such a law may be greatly abused, and permit great moral frauds; but this is a question for the legislature, and not for the courts.

41 Minn. 227, 231, 43 N.W. 52, 53 (1889). Although we previously urged the legisla-

ture to place a dollar limit on the homestead exemption, *e.g., O'Brien v. Johnson,* 275 Minn. 305, 311 & n. 9, 148 N.W.2d 357, 361 & n. 9 (1967); *Jacoby,* 41 Minn. at 231, 43 N.W. at 53, the legislature in 1986 again reaffirmed an area-based exemption. 1986 Minn.Laws, *supra,* at 467. Because the type of limit chosen is permissible and one-half acre in platted areas or 160 acres in unplatted areas is reasonable, the exact size and shape of the homestead exemption is better left to the legislature.

## III.

Social policies also support the continued recognition of a homestead exemption. In general, exemption provisions provide for and protect a debtor's fundamental needs by limiting the assets available for distribution to creditors. We previously said:

> The humane and enlightened purpose of an exemption is to protect a debtor and his family against absolute want by allowing them out of his property some reasonable means of support and education and the maintenance of the decencies and proprieties of life. The legislative purpose was to adapt the exemptions granted to the circumstances and needs of different classes of debtors.

*Poznanovic v. Maki,* 209 Minn. 379, 382, 296 N.W. 415, 417 (1941); *see also* Resnick, *Prudent Planning or Fraudulent Transfer? The Use of Nonexempt Assets to Purchase or Improve Exempt Property on the Eve of Bankruptcy,* 31 Rutgers L.Rev. 615, 621 (1978) (listing purposes of bankruptcy exemptions). Each state legislature advances these purposes by enacting its exemptions in light of that state's circumstances. Minnesota's homestead exemption definitely fulfills these goals.

The primary rationale for the homestead exemption is to "secur[e] the home against the uncertainties and misfortunes of life," even at the sacrifice of just demands. *Title Ins. Co.,* 320 N.W.2d at 885; *see also Holden v. Farwell, Ozmun, Kirk & Co.,*

223 Minn. 550, 559, 27 N.W.2d 641, 646 (1947).

> This state has long recognized the importance, notwithstanding the just demands of creditors, for a debtor's home to be a "sanctuary." This "wise and humane policy" is not just for the debtor's benefit, but is also "in the interest of the state, whose welfare and prosperity so largely depend upon the growth and cultivation among its citizens of feelings of personal independence, together with love of country and kindred—sentiments that find their deepest root and best nourishment where the home life is spent and enjoyed."

*Cargill, Inc. v. Hedge,* 375 N.W.2d 477, 479 (Minn.1985) (citations omitted). In addition, the homestead law is to be liberally construed. *Eustice v. Jewison,* 413 N.W.2d 114, 119 (Minn.1987); *Ryan v. Colburn,* 185 Minn. 347, 350, 241 N.W. 388, 389 (1932).

Exemption laws work in tandem with debt discharge to effectuate a debtor's fresh start.[3] *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6340. Even though the homestead exemption allows some debtors a fresher start than others, *see Tveten,* 848 F.2d at 876, the public good and connections with the community are promoted by allowing a debtor to start anew. *Denzer v. Prendergast,* 267 Minn. 212, 216, 126 N.W.2d 440, 443 (1964); Ayer, *How to Think about Bankruptcy Ethics,* 60 Am.Bankr.L.J. 355, 368 (1986). Thus, creditor collection efforts generally take a back seat to debtor financial rehabilitation. The debtors in this case have three children, Mrs. Haggerty has been unemployed since 1975, and Mr. Haggerty has recently sustained several business failures. Since the fall of 1985, he has been unable to secure steady employment. As a result, a fresh start with equity in the debtors' family home is a desirable goal.

---

3. For a good general discussion of the policies supporting bankruptcy exemptions and on which we relied for some of the following analysis, see Comment, *The Night Before Bankruptcy: The Eighth Circuit's Response to Bankruptcy Estate Planning,* 15 Wm. Mitchell L.Rev. 643 (1989).

Wanting to preserve as much of one's property in spite of bankruptcy is a natural human desire and a home is often a debtor's largest asset. The problem facing courts is to avoid unfair retention of assets by debtors. *See* Eisenberg, *Bankruptcy Law in Perspective,* 28 UCLA L.Rev. 953, 994 (1981). With Minnesota's unlimited exemptions declared unconstitutional, the homestead is probably the last exemption allowing a debtor to shield from creditors a significant amount of assets. *See* Minn. Stat. §§ 510.01–510.02, 550.37 (1988 & Supp.1989). It is not fraudulent, however, to do what the law allows. The law permits the transferring of assets into exempt property, even exemptions without a value limit, prior to bankruptcy. *Tveten,* 402 N.W.2d at 555–56; *Jacoby,* 41 Minn. at 229–30, 43 N.W. at 52–53 (homestead); H.R.Rep. No. 95, *supra,* at 361. Nothing prevents a debtor from mortgaging or selling a homestead the day after discharge. While there is the potential for fraud and abuse because of the lack of a value limit, this does not make the homestead exemption unconstitutional. This problem is better dealt with through fraudulent conveyance law and denial of discharge. *See Tveten,* 848 F.2d at 875–76; *Tveten,* 402 N.W.2d at 555–56.

The certified question is answered in the negative and we reiterate: the homestead exemption is constitutional because it provides objective and reasonable limits in the form of area limits.

Certified question answered.