STATE of Minnesota, Respondent,

v.

Archie B. BLOOFLAT, Appellant.

No. C0–02–2095.

Court of Appeals of Minnesota.

Nov. 18, 2003.

Mike Hatch, Attorney General, St. Paul, and Joseph Sylvan Mayers, Sauk Rapids, for respondent.

Jeffrey Stephen Sheridan, Eagan, for appellant.

Considered and decided by TOUSSAINT, Chief Judge; KLAPHAKE, Judge and HALBROOKS, Judge.

## OPINION

TOUSSAINT, Chief Judge.

On appeal from his convictions of driving after cancellation and aggravated driving under the influence (DWI), appellant-de-

fendant argues that imposing mandatory consecutive sentences for a crime and its lesser-included offense is unconstitutional because it creates sentences of more than one year without the right to a twelve-person jury trial. After reviewing the statutes at issue, we hold that driving after cancellation is not a lesser-included offense of aggravated DWI. But because we hold that the statute mandating consecutive sentences exceeding one year for gross misdemeanors violates Article I, section 6 of the Minnesota Constitution, we reverse and remand.

## FACTS

The facts of the present case are not disputed. On April 15, 2000, appellant Archie B. Blooflat was arrested and subsequently charged with five alcohol-related gross misdemeanor driving offenses, including aggravated driving under the influence under Minn.Stat. §§ 169.129, 169.123 (Supp.1999) [1]; driving under the influence under Minn.Stat. § 169.121 (Supp.1999); and gross misdemeanor driving after cancellation under Minn.Stat. § 171.24, subd. 5 (Supp.1999). At the time of arrest, Blooflat's driving record indicated that he had already been convicted of similar alcohol-related driving offenses on five previous occasions.

At trial, the district court informed Blooflat that, because of his prior alcohol-related offenses, he faced consecutive sentences if convicted of aggravated DWI and any other gross misdemeanor for which he was charged. The statute empowering the court to impose the sentences at that time read, in relevant part:

> When a court is sentencing an offender for a violation of section ... 169.129 [aggravated DWI] and a violation of

[section 171.24 (driving without a valid license) or section 169.121 (driving while intoxicated)], and the offender has five or more prior impaired driving conditions, five or more prior license revocations, or a combination of the two based on separate instances, within the person's lifetime, the court shall sentence the offender to serve consecutive sentences for the offenses, notwithstanding the fact that the offenses arose out of the same course of conduct.

Minn.Stat. § 609.035, subd. 2(g) (Supp. 1999).

Having been charged with violating Minn.Stat. §§ 169.129, 169.121, and 171.24, and having five previous impaired-driving convictions, Blooflat faced mandatory consecutive sentences and the possibility of two years incarceration. He therefore moved for a twelve-person jury. The district court denied the motion, noting that the maximum sentence for each count was one year, and that he was not therefore entitled to a twelve-person jury. A six-person jury, presented both with the arresting officer's testimony and with Blooflat's driving record, subsequently found Blooflat guilty on all five counts.

The district court sentenced Blooflat to one year for aggravated DWI, and a consecutive sentence of one year for driving after cancellation. Blooflat now appeals.

## ISSUES

I. Does Minn.Stat. § 609.035, subd. 2(g) (Supp.1999) have an unconstitutional effect by mandating consecutive sentences for two included offenses?

II. Is Minn.Stat. § 609.035, subd. 2(g) (Supp.1999) unconstitutional be-

---

1. All references to statutes refer to the laws in effect at the time of Blooflat's arrest. Chapter 169 was significantly modified in 2000, reco- difying all alcohol-related driving offenses to the newly-created Chapter 169A.2000 Minn. Laws ch. 478.

cause it subjects non-felony defendants to felony-like sentences, while only providing six-person juries?

III. Were errors at trial sufficient to warrant reversal of Blooflat's conviction?

## ANALYSIS

 The constitutionality of a statute presents a question of law that this court reviews de novo. *State v. Wright,* 588 N.W.2d 166, 168 (Minn.App.1998), *review denied* (Minn. Feb. 24, 1999). "In evaluating constitutional challenges, the interpretation of statutes is a question of law." *State v. Manning,* 532 N.W.2d 244, 247 (Minn.App.1995), *review denied* (Minn. July 20, 1995). A statute will be presumed constitutional unless the party challenging the statute proves beyond a reasonable doubt that the statute is unconstitutional. *In re Haggerty,* 448 N.W.2d 363, 364 (Minn.1989).

### I.

Blooflat challenges Minn.Stat. § 609.035, subd. 2(g) (Supp.1999), arguing that by mandating consecutive sentences for included offenses, the legislature has effectively re-created a sentencing scheme that the Minnesota Supreme Court declared unconstitutional in *Baker v. State,* 590 N.W.2d 636 (Minn.1999). While we disagree with Blooflat's basic interpretation of Minnesota law, we do find *Baker* authoritative.

In *Baker,* the supreme court examined a legislatively-created class of crime known as "enhanced gross misdemeanors," which permitted a court to impose two-year sentences without providing the twelve-member jury required for felonies. 590 N.W.2d at 637. The supreme court struck

down the legislation, finding it deprived defendants facing more than one year incarceration—in other words, defendants facing a *felony sentence*—of their constitutional right to a twelve-person jury. *Id.* at 638.

 Blooflat argues that section 609.035 has the same unconstitutional effect as an enhanced gross misdemeanor because it simply "piggy-backs" the sentences of sections 171.24 and 169.129, regardless of the fact that the crimes are "included offenses" and arose out of the same course of conduct. He argues, therefore, that the statute necessarily penalizes him with the same felony-like jail term the supreme court rejected in *Baker. See* Minn. Const. art I, § 6.

This court has not previously addressed whether Minn.Stat. § 171.24 is, in fact, a lesser-included offense of Minn.Stat. § 169.129. According to statute, in relevant part, an "included offense" may be either a "lesser degree of the same crime," or a "crime necessarily proved if the crime charged were proved." Minn.Stat. § 609.04, subd. (1), (4) (2002).

Blooflat contends that section 171.24, subdivision 5 is a "lesser degree" of section 169.129 because both offenses share the element of driving after an alcohol-related license cancellation. Although these offenses may often be proven with the same facts, Blooflat ignores the historical purpose and scope of the two laws. Historically, driving after cancellation, revocation, or suspension under section 171.24 was a misdemeanor offense, designed to punish those who drove without a valid drivers license. *See* Minn.Stat. § 171.24 (1941). Early incarnations of the section made no distinction between alcohol-related cancellation and non-alcohol-related revocation or suspension. *Id.*[2] Aggravated DWI un-

---

**2.** Section 171.24 remained virtually un- changed until a 1993 legislative amendment,

der section 169.129, however, has always been associated *solely* with alcohol-related driving offenses, and was created to enhance the penalty of driving under the influence. *See* 1978 Minn. Laws ch. 727, § 9. It is therefore improbable that the legislature intended the crime of driving after cancellation to be a "lesser degree" of aggravated driving under the influence.

Nor can one crime be "necessarily proved" if the other crime were proved. Although both offenses may be partially proven when the defendant is operating a motor vehicle while his license is cancelled, section 171.24 additionally requires that "the person has been given notice of or reasonably should know of the cancellation." Minn.Stat. § 171.24, subd. 5(2) (Supp.1999). Section 169.129, on the other hand, is silent as to notice, but requires that the defendant be under the influence of alcohol while he or she is operating the motor vehicle. Minn.Stat. § 169.129, subd. 1 (Supp.1999). As such, each crime has separate elements that must be proven in order to be convicted, and either can be proven without necessarily proving the other.

Because section 171.24, subdivision 5 is not a "lesser degree" of section 169.129, and is not necessarily proven when section 169.129 is proven, the two offenses are not "included" as defined by statute. We cannot, therefore, agree with Blooflat's assertion that "piggy-backing" consecutive sentences for these offenses, in and of itself, is unconstitutional.

## II.

■ We now turn to the broader question of whether section 609.035 deprives defendants of their constitutional rights by mandating consecutive sentences exceeding one year for a single behavioral inci-

dent, without providing the twelve-person jury required for felonies. In considering this question, we are both guided and limited by the same history that led to the supreme court's holding in *Baker.*

For more than a century, all Minnesota juries consisted of twelve people, even though the constitution was silent on the matter. *Baker,* 590 N.W.2d at 638. In 1988, however, Minnesota voters adopted a constitutional amendment requiring twelve-person juries "[i]n all prosecutions defined by law as felonies," but only six-person juries in all other criminal prosecutions. Minn. Const. art. I, § 6. The effect of this amendment was notable, because guaranteeing twelve-person juries *only* in felony cases suddenly gave the definition of felony constitutional significance. *Baker,* 590 N.W.2d at 638.

The *Baker* court, after recounting and analyzing the development of felonies in Minnesota, determined that felonies had traditionally been defined as *any* crime subjecting the accused to more than one year imprisonment. *Id.* at 639. And with the constitutional implications created by the 1988 amendment, the court held that the legislature could not manipulate this historical definition "in a manner which impinges on an accused's constitutional rights, including the right to a twelve-person jury." *Id.* at 638. The court therefore concluded that the "enhanced gross misdemeanor" legislation, which reclassified and redefined criminal conduct in a manner allowing two-year sentences for offenses not defined as felonies, could not pass constitutional muster. *Id.*

Although we recognize that section 609.035 is unlike the statutes in *Baker* in that it does not reclassify or redefine any of the crimes delineated within it, we find

which enhanced the crime of driving after cancellation as inimical to public safety to

gross misdemeanor status. 1993 Minn. Laws ch. 347, § 16.

the constitutional ramifications just as serious. By mandating consecutive sentences, the legislature effectively created two-year sentences for a single behavioral incident while continuing to label the crimes gross misdemeanors, so as to deny defendants their constitutional right to a twelve-person jury. This, as *Baker* notes, is expressly forbidden. *Id.* at 638.

Further, without a felony classification, we are unable to "graft" a twelve-person jury requirement onto the statute. As the supreme court observed, "voters did not constitutionally guarantee a defendant accused of a crime other than a felony the right to a twelve-person jury." *Id.* at 640. Were we to uphold the statute by reading such a requirement into it, we would essentially be holding that violating the statute constitutes a felony, "as only individuals accused of felonies have a right to a twelve-person jury." *Id.* We cannot ignore the legislature's clear language, which labeled the crimes listed in Minn.Stat. § 609.035, subd. 2(g) as gross misdemeanors, simply to uphold the statutes. *Id.* Thus, while we are mindful of our power to declare a statute unconstitutional "only when absolutely necessary," *In re Haggerty*, 448 N.W.2d 363, at 364 (Minn.1989), we hold that the legislature overstepped its constitutional authority in enacting Minn. Stat. § 609.035, subd. 2(g). We must therefore reverse Blooflat's sentence, and remand to the district court for re-sentencing.

### III.

■ Although we reverse Blooflat's sentence, there is no basis to reverse his convictions. Blooflat asserts that the state failed to produce sufficient evidence to prove beyond a reasonable doubt (a) that his license status was cancelled as inimical to public safety, as required for conviction under Minn.Stat. § 169.129; and (b) that

he had a "prior impaired driving conviction" within five years preceding the incident in the present case, as required for his conviction under Minn.Stat. § 169.121. To the contrary, Blooflat's driving record, in evidence at trial, clearly indicates both his driver's license status and a 1998 conviction for aggravated DWI. Additionally, Blooflat's arresting officer testified that Blooflat's license at the time of his arrest was canceled as inimical to public safety, a term that was later explained to the jury. Viewed in the light most favorable to conviction, a jury could reasonably accept this evidence as truthful, and disbelieve any contrary evidence. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). As such, we find no reason to disturb the convictions.

■ Blooflat also raises several arguments concerning the propriety of the district court's jury instructions. Since he failed to object to the jury instructions at trial, we decline to address his arguments here. *State v. Cross*, 577 N.W.2d 721, 724 (Minn.1998).

### DECISION

Minn.Stat. § 171.24, subd. 5 (Supp. 1999) is not a lesser-included offense of Minn.Stat. § 169.129 (Supp.1999); a defendant may be convicted of both offenses, even if the offenses arose out of the same course of conduct. Nonetheless, we conclude Minn.Stat. § 609.035, subd. 2(g) (Supp.1999) is unconstitutional because, by mandating consecutive sentences, it deprives defendants facing more than one year incarceration of their constitutional right to a twelve-person jury.

**Reversed and remanded.**