In re Omar A. TVETEN, Debtor.

No. C7–86–1580.

Supreme Court of Minnesota.

March 27, 1987.

See also, Bkrtcy., 70 B.R. 529.

Gordon B. Conn, Jr., James M. Pfau, Minneapolis, for Norwest Bank Nebraska.

Steven P. Nosek, Kathryn Seebart, Minneapolis, for Committee of Unsecured Creditors.

Cass S. Neil, St. Paul, for Omar A. Tveten.

James S. Simonson, Melvin R. Mooty, Phillip W. Bahl, William J. Fisher, Minneapolis, amicus curiae for Fraternal Benefit Society.

Gary W. Koch, Reed H. Glawe, New Ulm, amicus curiae for PCA of Redwood Falls.

## OPINION

KELLEY, Justice.

Shortly before filing a petition for voluntary bankruptcy in federal court, a debtor converted significant amounts of non-exempt property into property which under Minnesota law was exempt from attachment or execution. In bankruptcy court, certain creditors filed timely objections to the debtor's assertion of those exemptions. This action resulted from issues arising concerning the applicability of Minnesota's debtor exemption laws. The United States Bankruptcy Court has certified to this court four questions of law involving our state's property exemption statutes.[1] Specifically, we have been requested to answer the following questions:

1. Are a debtor's rights to receive payments under, or a debtor's interests in, property known as annuities or similar plans or contracts purchased for cash from fraternal benefit associations or societies such as Lutheran Brotherhood, exempt under Minn.Stat. §§ 550.37, subd. 11 (1986) or 64B.18 (1986)?

2. Are a debtor's rights to receive payments under, or a debtor's interests in, property known as unmatured life insurance contracts purchased for cash from fraternal benefit associations or societies such as Lutheran Brotherhood, exempt un-

---

1. Pursuant to the authority given us by the Uniform Certification of Questions of Law Act, Minn.Stat. § 480.061 (1986), we may answer questions of law certified to us by the United States District Court. That statute, however, does not specifically grant us authority to consider questions certified to us by the United States Bankruptcy Court. Although we note that in 28 U.S.C. § 151 (Supp.1985), the United States Bankruptcy Court is denominated a divi-sion of the United States District Court, our jurisdiction to answer questions certified by it to us is as yet unclear. In this case, because the parties have briefed and orally argued the certified questions, we proceed to consider them. However, our acceptance should not be construed as any binding precedent. Resolution of whether questions certified by the United States Bankruptcy Court will be entertained in other cases remains for future consideration.

der Minn.Stat. §§ 550.37, subd. 11 or 64B.18?

3. Can a debtor liquidate nonexempt assets and purchase annuities, life insurance or similar contracts from a fraternal benefit association or society such as Lutheran Brotherhood and then successfully claim those investments as exempt under Minn. Stat. §§ 550.37, subd. 11, or 64B.18?

4. Are Minn.Stat. §§ 550.37, subd. 11, and 64B.18 unconstitutional as violative of article 1, section 12 or article 12, section 1 of the Minnesota Constitution?

We answer each of these four questions in the affirmative.

For the purposes of the case as it is presented to us regarding the certified questions, the facts are not in dispute. Debtor Omar Tveten filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court on January 7, 1986, stating that he had $18.92 million in liabilities and only $2,039,900 in assets. In the appropriate schedules of the petition, debtor claimed $776,058.54 as exempt property [2] including three annuities purchased from Lutheran Brotherhood, Inc., a fraternal benefit society, valued at $325,774.61, $186,680.66, and $20,487.35, respectively. Debtor also listed as exempt a life insurance policy issued by Lutheran Brotherhood, Inc. with a cash surrender value of $168,683.51. Tveten's creditors made timely objections to his claim to those four specific exemptions.

In the four months immediately before he filed a petition in the bankruptcy court, debtor collected cash from the sale of various nonexempt assets. The cash originated from the sale of four parcels of real property, from his salary and other income, from his checking account, from his retire-ment plan and from a profit sharing plan. He then invested the cash in three Lutheran Brotherhood annuities and in the Lutheran Brotherhood life insurance policy.

Debtor claims that the life insurance policy and the annuities are exempt under Minn.Stat. § 550.37, subd. 11 and Minn. Stat. § 64B.18. In objecting to his exemption claims, the creditors contend that the statutes do not exempt the annuities or the life insurance policy, but if they do, that the statutes are unconstitutional under Minn. Const. art. 1, § 12 and art. 12, § 1. We conclude that the statutes do exempt debtor's annuities and life insurance policies but that the statutes violate our state constitution.

■ 1–2. We first consider whether the claimed exempt property is made so by Minn.Stat. § 64B.18.[3] Resolution of the issue turns on whether unmatured life insurance benefits and annuities issued by a fraternal benefit society constitute "other benefits" as that phrase is used in section 64B.18.

Minn.Stat. § 64B.16, subd. 1 (1986) provides that "[a] [fraternal benefit] society may provide the following contractual benefits on an individual or nongroup basis: * * * (3) annuity benefits * * * (7) such other benefits as authorized for life insurers and which are not inconsistent with this chapter." The statute includes within the scope of "benefits" both annuities and unmatured life insurance. Therefore, the debtor Tveten claims they are "other benefits" as that phrase is used under Minn. Stat. § 64B.18 and are, therefore, exempt from creditors' collection remedies.

The creditors argue that the life insurance policy fails to fall within the statutory parameters of "benefits" as used in the

2. Pursuant to the United States Bankruptcy Code, debtor elected to utilize the exemption laws of Minnesota rather than those of the federal government.

3. Section 64B.18 (1986) reads in its entirety:
Except as provided in chapter 256B, the money *or other benefits,* charity, relief, or aid to be paid, provided, or rendered by any society authorized to do business under this chap-ter shall, neither before nor after being paid, be liable to attachment, garnishment, or other process and shall not be ceased, taken, appropriated, or applied by any legal or equitable process or operation of laws to pay any debt or liability of a certificate holder or of any beneficiary named in the certificate, or of any person who may have any right thereunder. (Emphasis supplied).

statute. They rely on *In re Perkins*, 9 B.R. 809 (Bankr.S.D.Ohio 1981), where the bankruptcy court in the southern district of Ohio interpreted an Ohio statute virtually identical to Minn.Stat. § 64B.18.[4] That court held that "[l]ife insurance is not a 'benefit, charity, relief or aid to be paid, provided, or rendered by any society.'" *Id.* at 814. Although the Ohio statute and Minn.Stat. § 64B.16, subd. 1 are virtually identical, the two statutes do differ in one respect: the Minnesota statute provides that a fraternal benefit society may provide "such other benefits as authorized for life insurers;" Minn.Stat. § 64B.16, subd. 1(7); the Ohio statute contains no similar provision. Whether in Minnesota life insurance is exempt under section 64B.18 appears to turn on the construction of this language not contained in the Ohio statute. Because this phrase seems patently to include life insurance, we conclude the creditors' reliance on the Ohio case to be inapposite. Therefore, under Minn.Stat. § 64B.18 the debtor's annuities and unmatured life insurance are exempt.

We next consider whether Minn.Stat. § 550.37, subd. 11,[5] provides the debtor an exemption. Significantly, section 550.37, subd. 11, likewise contains the phrase "other benefits." Does the phrase "other benefits" as used in section 550.37, subd. 11, include annuities and unmatured life insurance? Unlike chapter 64B, Minn.Stat. ch. 550 contains no definition of "other benefits."

When construing statutes relating to the same subject matter, we apply the doctrine of pari materia, as we have previously noted:

> Statutes relating to the same subject are presumed to be imbued with the same spirit and to have been passed with deliberation and full knowledge of all existing legislation on the subject and regarded by the lawmakers as being parts of a connected whole.

> "Statutes are in pari materia when they relate to same matter or subject even though some are specific and some general and even though they have not been enacted simultaneously and do not refer to each other expressly. * * * Where two acts in pari materia are construed together and one contains provisions omitted from the other, the omitted provisions will be applied in the proceeding under the act not containing such provisions, where not inconsistent with the purpose of the act. * * * " 6 Dunnell, Supp. § 8984.

*Kaljuste v. Hennepin County Sanatorium Comm'n*, 240 Minn. 407, 414, 61 N.W.2d 757, 762 (1953).

Consideration of alleged distinctions between old-line insurance companies and fraternal benefit societies are unnecessary to the determination of whether annuities and/or unmatured life insurance benefits provided by a fraternal benefit society are exempt under either Minn.Stat. §§ 64B.18 or 550.37, subd. 11.

Because the two statutes contain similar wording and cover the same subject matter, we conclude that they should be similarly construed. Accordingly, we hold that annuities and unmatured life insurance

---

**4.** Ohio Rev. Code Ann. § 3921.18 (Anderson 1971) reads:

> No money or other benefit, charity, relief, or aid to be paid, provided, or rendered by any [fraternal benefit] society, is liable to attachment, garnishment, or other process, or to be seized, taken, appropriated, or applied by any legal or equitable process or operation of law to pay any debt or liability of a member or beneficiary, or any other person who may have a right, either before or after payment by the society.

**5.** Minn.Stat. § 550.37 (1986) provides in relevant part:

> Subdivision 1. The property mentioned in this section is not liable to attachment, garnishment, or sale on any final process, issued from any court.
>
>    *   *   *   *   *   *
>
> Subd. 11. All money, relief, or *other benefits* payable or to be rendered by any police department association, fire department association, beneficiary association, or fraternal benefit association to any person entitled to assistance therefrom, or to any certificate holder thereof or beneficiary under any such certificate.
>
> (Emphasis supplied).

benefits written by fraternal benefit societies are included as "other benefits" as the phrase is used in both exemption statutes.

■ 3. The third question presented to us asks that we determine whether under Minnesota law, a debtor may liquidate nonexempt assets and convert the cash received into exempt property by purchasing annuities, life insurance or similar contracts from a fraternal benefit association thereby protecting that property from the claims of creditors. In the past, in holding that an insolvent debtor may convert nonexempt property into exempt homestead property, we have noted that the debtor's actions in so doing did not in and of themselves constitute a fraud on creditors:

> A debtor in securing a homestead for himself and family, by purchasing a house with non-exempt assets, or by moving into a house which he already owns, takes nothing from his creditors which the law secures to them, or in which they have any vested right. He merely puts his property into a shape in which it will be the subject of a beneficial provision for himself, which the law recognizes and allows. Even if he disposes of his property subject to execution, for the very purpose of converting the proceeds into exempt property, this will not constitute legal fraud. This he may do at any time before the creditors acquire a lien upon the property. It is a right which the law gives him, subject to which every one gives him credit, and fraud can never be predicated on an act which the law permits.

*Jacoby v. Parkland Distilling Co.,* 41 Minn. 227, 229–30, 43 N.W. 52, 52 (1889).

*Jacoby* involved only the homestead exemption. However, its underlying premise is equally applicable to all exemptions. For example, the United States Eighth Circuit Court of Appeals applying Minnesota law has utilized the *Jacoby* reasoning in cases involving nonhomestead exemptions. *See, e.g., Crawford v. Sternberg,* 220 F. 73, (8th Cir.1915), *quoting Jacoby;* and *Forsberg v. Security State Bank,* 15 F.2d 499 (8th Cir. 1926), *quoting Crawford.*

Although the law allows a debtor to convert nonexempt property into exempt property, it does not allow a debtor to perpetrate a fraud on creditors. For example, in *Forsberg* the Eighth Circuit Court of Appeals held that to establish fraud, evidence must be produced in addition to the mere conversion of nonexempt property to exempt property. Specifically, the *Forsberg* court stated:

> We find in the record no evidence that the bankrupt was actuated by any fraudulent purpose, unless such purpose should be implied from his intentional conversion of nonexempt assets into exempt assets. In our opinion no such implication exists. We think that, before the existence of such fraudulent purpose can be properly found, there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of nonexempt assets into exempt and which are indicative of such fraudulent purpose.

*Forsberg,* 15 F.2d at 502. We have likewise required a showing of something more. *See Stricker v. Trullinger,* 172 Minn. 547, 216 N.W. 231 (1927), *citing Jacoby* and *Forsberg.* In recapping Minnesota law on this issue, in *O'Brien v. Johnson,* 275 Minn. 305, 148 N.W.2d 357 (1967), we stated "[i]t has long been the law of this state that a judgment debtor may assert an exemption for the express purpose of evading his creditors. This we have held is not fraud, regardless of the debtor's motive." *Id.* at 308, 148 N.W.2d at 360.

Under Minnesota law, if conversion of nonexempt property to exempt property does not, of itself, constitute a fraud on creditors, what does? The answer lies in the Uniform Fraudulent Conveyance Act (UFCA), adopted in Minnesota by enactment of 1921 Minn.Laws, ch. 415, now codified as Minn.Stat. §§ 513.20–513.32 (1986). The UFCA delineates two types of fraud— fraud implied by law and fraud as a matter of fact.

The UFCA defines fraud implied by law in Minn.Stat. § 513.23. That statute provides "[e]very conveyance made and every obligation incurred by a person who is or

will be thereby rendered insolvent is fraudulent as to creditors without regard to the person's actual intent if the conveyance is made or the obligation is incurred without a fair consideration." Whether fraud is to be implied in law depends upon upon whether "fair consideration" has been given for the conveyance. "Fair consideration" is basically defined as an exchange of fair equivalents. Minn.Stat. § 513.22. "Fair consideration" is to be determined in terms of value, not in terms of the character of the property exchanged. *See Schlecht v. Schlecht*, 168 Minn. 168, 172, 209 N.W. 883, 885 (1926); *accord Freitag v. The Strand of Atlantic City*, 205 F.2d 778, 784 (3rd Cir.1953). The UFCA defines fraud in fact as "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Minn.Stat. § 513.26. *Jacoby, Forsberg,* and *O'Brien* all stand for the proposition that before actual fraudulent intent can be found, "there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of nonexempt assets into exempt and which are indicative of such fraudulent purpose." *Forsberg*, 15 F.2d at 502.

Thus, it clearly appears that under Minnesota law a debtor in contemplation of bankruptcy may convert nonexempt property into exempt property, so long as the conversion does not violate the Uniform Fraudulent Conveyance Act. Since both the question of whether such a transfer was made without "fair consideration" and whether there was "actual intent * * * to hinder, delay, or defraud" creditors involve questions of fact they remain for resolution by the bankruptcy court.

■ 4. To answer the final certified question we must determine whether the statutes (or either of them) violate article 1, section 12 or article 12, section 1 of the Minnesota Constitution. We start with the premise that a duly enacted statute carries with it a presumption in favor of its constitutionality. *See Guilliams v. Commissioner of Revenue*, 299 N.W.2d 138, 142 (Minn.1980). This presumption prevails unless the party challenging a statute's constitutionality has demonstrated beyond a reasonable doubt that it violates a constitutional provision. *Contos v. Herbst*, 278 N.W.2d 732, 736 (Minn.), *appeal dismissed sub. nom. Prest v. Herbst*, 444 U.S. 804, 100 S.Ct. 24, 62 L.Ed.2d 17 (1979).

■ In our review of the constitutional challenge raised, we first focus on article 1, section 12,[6] which provides that a "reasonable amount of property" shall be exempt from claims of creditors. The core dispute revolves around the constitutional words "reasonable amount." Do those words mean, as the creditors contend, that the term "amount" is synonymous with the term "value," at least when applied to property which is inherently value laden (e.g., the property at issue here: annuities and life insurance)? Or, do they mean, as Tveten argues, that "amount" does not mean value and that the constitutional directive is satisfied when the legislature delineates the type of property exempt? Each proponent relies upon a 90 year old trilogy of cases in support of the position taken.[7]

Those cases arose out of a woman's assignment of property to her creditors under the insolvency laws then in effect. Shortly before the assignment, the woman's husband died. His life had been insured by eight different fraternal benefit associations and/or insurance companies for a sum total of $15,800. Mrs. How, the debtor and sole beneficiary of the life insurance proceeds, claimed that the life insurance

---

6. The relevant part of article 1, section 12, reads:

> A *reasonable amount of property* shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law.

(Emphasis supplied).

7. *In re How (How I)*, 59 Minn. 415, 61 N.W. 456 (1894); *In re How (How II)*, 61 Minn. 217, 63 N.W. 627 (1895), *First National Bank of Shakopee v. How (How III)*, 65 Minn. 187, 67 N.W. 994 (1896).

benefits were exempt from her creditors by statute. The issue raised before the court in *How I* in 1894 was similar to that raised by the instant case; both cases involve statutes governing the exemption of benefits from fraternal benefit societies or associations and neither statute placed a valuation limitation on the exemption.[8] In *How I*, we held the exemption law without a value limitation to be unconstitutional and wrote:

> In the present case there is no limit but the total amount of insurance which can .be obtained on the life of the insured from all such insurance companies doing business in the state. This may amount to millions. It is clear that the total aggregate of the capacity or power of all these insurance companies to insure the life of one individual is no proper measure of the amount that shall be exempt, and no proper basis or principle by which to determine a proper or reasonable amount. All other exemption laws in this state which have come to our notice measure the amount of the exemption by the number, quantity, or value of the thing or things exempt. Some or all of these measures are applied. But in the case at bar there is no certain or proper measure of any kind. The aggregate capacity or power of all such insurance companies to insure the life of one individual is no criterion by which to determine what is a reasonable amount of exemption.

> The constitutional provision in question prohibits the legislature from exempting an unreasonable amount of property.

59 Minn. at 419, 61 N.W. at 457.

*How II*, which followed, presented this court with a different issue: that is, wheth-

er the recipient of matured life insurance benefits may exempt those benefits from creditors without placing the money first in trust. The debtor in *How II* argued that the exemption statute simply allowed her to exempt the insurance proceeds (which were classified as a gift) without the formality of the intervention of a trustee.[9] In agreeing with the debtor, we stated:

> It is well settled that by the intervention of a trustee the donee of such a gift may be given the benefit thereof, exempt from seizure to satisfy her debts, and we have no doubt that a statute which merely accomplishes the same purpose without the intervention of a trustee is valid. *To this extent, and to this extent only, we modify the former opinion in this case,* and this leads to an affirmance of the order of the court below. Whether or not these funds will always remain exempt after they reach the hands of Mary M. How, and whether they may not lose their exempt character, the same as other exempt property, or the proceeds thereof, when converted into property not exempt, we do not decide.

61 Minn. at 218, 63 N.W. at 627 (emphasis supplied). *How II* applied only to matured life insurance benefits. Consequently, the holding of *How I*, that the exemption statute was unconstitutional, still applied with regard to unmatured life insurance benefits. Because *How III* was based upon the reserved issue of *How II*, it too only applies to matured life insurance benefits, so the ruling of *How I* of unconstitutionality was unaffected by either *How II* or *III.*[10]

We are persuaded that the reasoning and conclusion of the court in *How I* still pre-

---

**8.** At one time, the exemption statute at issue in *How I* had a value limit of $5,000. By 1894, however, the statute had been amended and the value limitation removed.

**9.** This argument differed significantly from that raised in *How I*. In *How I*, the debtor simply chose to argue the validity of the exemption statute. On rehearing (*How II*), she chose the alternative position.

**10.** Relying upon the premise that a debtor's right to receive the cash surrender value of an

unmatured life insurance policy was not property but rather only a right to obtain property at some later date, we did hold in *Fox v. Swartz,* 235 Minn. 337, 348–49, 51 N.W.2d 80, 86–87 (1952) an unlimited exemption for unmatured life insurance to be constitutional. This underlying premise of *Fox* no longer has validity in the light of subsequent legislative enactment that the cash surrender value of an unmatured life insurance policy is property, at least with respect to debtor-creditor relations. *See* 1980

vails and supports the creditors' position in this case. Adoption of Tveten's contention that the constitutional limitation on "reasonable amount" is satisfied by a mere designation of types of property, as *How I* demonstrated, would allow legislatures to exempt all kinds of monetary and other accounts without regard to the value of those accounts. Certainly, such a result was beyond the intention of the framers of article 1, section 12 of the Constitution. When determining whether annuities or unmatured life insurance are exempt from creditor's levy by being a "reasonable amount", by necessity "reasonable amount" must be synonymous with "reasonable value."

However, it does not follow that just because the "reasonable amount" language of the constitution requires some value limitation, that it requires a specific value limit. For example, the section governing employee benefits only exempts those benefits "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." Minn.Stat. § 550.-37, subd. 24 (1986). This type of limitation clearly passes constitutional scrutiny because it requires a court to limit the size of the exemption based upon objective criteria. In contrast, neither Minn.Stat. §§ 550.37, subd. 11, nor 64B.18 provide for any limitation at all. Rather than invade the province of the legislature by attempting to rewrite the two exemption statutes so as to provide an objective bench mark by which the "reasonable amount" of property exemption may be ascertained, we hold that both statutes violate article 1, section 12 of the Minnesota Constitution.

The fourth certified question additionally asked us, in the disjunctive, whether the two exemption statutes violated article 1, section 12 *or* article 12, section 1 of the Minnesota Constitution. Having concluded that article 1, section 12 was violated, it is perhaps unnecessary for us to address the claimed violation of article 12, section 1. However, we likewise conclude that that provision is also violated by the two statutes.

Article 12, section 1 generally prohibits special legislation when a general law can be made applicable.[11]

While the constitutional prohibition against special legislation does not deprive the legislature of the power to create classes and apply different rules to different classes, it must adopt a proper classification basis. That classification must be based upon substantial distinctions, which make one class substantially different, in a real sense, from another. *See, e.g., State ex rel Board of Courthouse and City Hall Commissioners v. Cooley,* 56 Minn. 540, 58 N.W. 150 (1893). A law will be considered to be general if the class to which it applies justifies a statute peculiar to the class in the matters addressed in the law, but if the classification is so patently arbitrary as to demonstrate constitutional evasion, the courts will void the enactment. *State ex rel Flaten v. Independent School District of Granite Falls,* 143 Minn. 433, 174 N.W. 414 (1919). What constitutes a class or a proper basis of classification that will meet the constitutional prohibition against special legislation is determined by employing a three point "rational basis" test. The classification will be deemed constitutionally proper:

> [I]f (a) the classification applies to and embraces all who are similarly situated with respect to conditions or wants justifying appropriate legislation; (b) the distinctions are not manifestly arbitrary or fanciful but are genuine and substantial so as to provide a natural and reasonable basis justifying the distinction; and (c) there is an evident connection between the distinctive needs peculiar to the class

---

Minn. Laws, ch. 599, § 7, now codified as Minn. Stat. § 550.37, subd. 23 (1986).

11. Article 12, section 1 reads in relevant part:
Prohibition of special legislation; particular subjects. In all cases when a general law can be made applicable, a special law shall not be enacted except as provided in section 2. Whether a general law could have been made applicable in any case shall be judicially determined without regard to any legislative assertion on that subject.

and the remedy or regulations therefor which the law purports to provide.

*Wichelman v. Messner,* 250 Minn. 88, 119, 83 N.W.2d 800, 824 (1957). *See also AFSCME Councils 6, 14, 65 and 96, AFL-CIO v. Sundquist,* 338 N.W.2d 560 (Minn. 1983); *appeal dismissed sub. nom. Minneapolis Police Relief Ass'n v. Sundquist,* 466 U.S. 933, 104 S.Ct. 1902, 80 L.Ed.2d 452 (1984); *Loew v. Hagerle,* 226 Minn. 485, 33 N.W.2d 598 (1948).

■ Here. the creditors claim that the classifications found in Minn.Stat. §§ 550.-37, subd. 11, and 64B.18 as they relate to exemption of a debtor's property from liability for satisfaction of creditor's claims impermissibly result in special legislation. They note that facially the exemptions granted by those statutes are limitless when the annuities or policies have been issued by a fraternal benefit society, whereas annuities and unmatured life insurance policies are only limitedly exempt when issued by a for-profit commercial insurance company. Minn.Stat. § 550.37, subd. 10 (1986). By virtue of this disparity, they claim debtors, such as Tveten, having purchased annuities and insurance from a fraternal benefit society, may claim complete exemption, whereas other debtors owning the identical type and amounts of securities may be entitled only to drastically limited exemptions. Our task is to decide whether there is a rational basis for thus partitioning "debtors" into two classes.

We stated in *Loew v. Hagerle* that the classification must be "germane or relevant to the purpose of the law * * *." 226 Minn. at 489, 33 N.W.2d at 601. We enunciated the purpose of exemption laws in *Poznanovic v. Maki,* 209 Minn. 379, 296 N.W. 415 (1941) when we said:

> The humane and enlightened purpose of an exemption is to protect a debtor and his family against absolute want by allowing them out of his property some reasonable means of support and education and the maintenance of the decencies and proprieties of life.

*Id.* at 382, 296 N.W. at 417. The exemption statute's beneficent purpose is fulfilled by according a reasonable exemption to debtors from creditors' claims to property, such as annuities and unmatured life insurance, but classifying debtors entitled to assert exemptions and the amount of such exemption on the basis of the kind of entity from which the property has been acquired is neither "germane nor relevant" to the promotion of that purpose of the exemption laws.

We can ascertain only one justification for the different treatment of debtors. The statutes provide an indirect subsidy to fraternal benefit societies. By statute, fraternal benefit societies are required to "operate for the benefit of members and their beneficiaries by: * * * (2) operating for one or more social, intellectual, educational, charitable, benevolent, moral, fraternal, patriotic, or religious purposes * * *." Minn. Stat. § 64B.05, subd. 1 (1986). By exempting the full amount of a debtor's interest in an unmatured life insurance contract or an annuity purchased from a fraternal benefit society, the legislature has made these fraternal benefit society contracts more attractive to investors (debtors) than the same contracts purchased from for-profit companies—and thus has provided an indirect subsidy to fraternal benefit societies. Although it may be argued that constitutes a possible justification, we conclude it affords an insufficient rational basis for differentiating between similarly placed debtors and their creditors.

Faced with this same issue, the Ohio Supreme Court reached the same conclusion. *See Williams v. Donough,* 65 Ohio St. 499, 63 N.E. 84 (1902). In holding the previous Ohio exemption statute [12] (a stat-

---

12. Ohio Revised Statutes § 3631–18, now repealed, provided:

The money or other benefit, charity, relief or aid to be paid, provided or rendered by any association authorized to do business under this act, shall not be liable to attachment by any trustee, garnishee, or other process, and shall not be seized, taken, appropriated or applied by any legal or equitable process; or by operation of law, to pay any debt or liabili-

ute virtually identical to Minn.Stat. § 64B.18) impermissibly discriminated between debtors, the Ohio court stated:

Now the section quoted (3631–18) provides a sweeping, absolute exemption of the money or other benefit going to the certificate holder or beneficiary from seizure for any debt or liability. No such exemption is provided with respect to any ordinary life policy, nor with respect to a certificate of an association doing business on the weekly payment or industrial plan, although it must be manifest that the characteristics and condition of the people who will be benefited by one contract in no essential differs from those who may be benefited by the other. And the same is true when comparison is made with other benevolent associations authorized by our statutes. It follows that the provision for exemption is an attempt to make an arbitrary classification by selecting a few of a class and conferring upon them privileges and benefits not conferred upon others coming within the same class, and is, therefore, invalid. The vice lying at the bottom of the whole scheme is that the exemption is made to depend, not upon the condition or characteristics of the recipient of the benefit, but upon the source from which the benefit is to be derived. It discriminates unequally in favor of one set of beneficiaries as compared with persons receiving money from other sources; thus favoring some beneficiaries as compared with other like beneficiaries, and at the same time, and by the same provision, denying that relief to some creditors, which, by other enactments, is accorded to others of like kind. In a word, the section fails to protect equally those who are the recipients of property, and fails to protect equally those who have the right to resort to the laws for the enforcement of claims against property, and is therefore in conflict with * * * the [Ohio] constitution.

*Id.* at 505–06, 63 N.E. at 86. We find the Ohio court's assessment to be persuasive.

ty of a certificate holder, or of any beneficiary named in the certificate, or any person who

Therefore, we likewise hold that §§ 65B.18 and 550.37, subd. 11, violate Minn. Const. art. 12, § 1 insofar as they attempt to give absolute exemption regardless of value to annuity contracts and unmatured life insurance purchased from a fraternal benefit association.

Accordingly, we answer the certified questions:

1. A debtor's rights to receive payments under, or a debtor's interests in, property known as annuities or similar plans or contracts purchased for cash from fraternal benefit associations or societies such as Lutheran Brotherhood are exempt under Minn.Stat. §§ 550.37, subd. 11, and 64B.18.

2. A debtor's rights to receive payments under, or a debtor's interests in, property known as unmatured life insurance contracts purchased for cash from fraternal benefit associations or societies such as Lutheran Brotherhood are exempt under Minn.Stat. §§ 550.37, subd. 11, and 64B.18.

3. A debtor may liquidate nonexempt assets and purchase annuities, life insurance or similar contracts from a fraternal benefit association or society such as Lutheran Brotherhood and then successfully claim those investments as exempt under Minn.Stat. §§ 550.37, subd. 11, and 64B.18 so long as the debtor does not violate the Uniform Fraudulent Conveyance Act, Minn.Stat. §§ 513.20–513.32.

4. Minn.Stat. §§ 550.37, subd. 11, and 64B.18 are unconstitutional as violative of article 1, section 12, and article 12, section 1, of the Minnesota Constitution insofar as they grant a value limitless exemption to debtors who have purchased annuities or unmatured life insurance from a fraternal benefit society.

may have any rights thereunder.