Mark E. MEDILL, et al., Appellants,

v.

STATE of Minnesota, Intervenor,

v.

Mark C. HALVERSON,
Trustee, Appellee.

No. C7–91–637.

Supreme Court of Minnesota.

Nov. 22, 1991.

Richard C. Mollin, International Falls, for appellants.

Mark C. Halverson, Mankato, for appellee.

Peter Ackerberg, Sp. Asst. Atty. Gen., St. Paul, for intervenor.

YETKA, Justice.

The following question of law was certified to this court by the United States District Court for the District of Minnesota:

> Does Minn.Stat. § 550.37, subd. 22 (1990), which exempts "[r]ights of action for injuries to the person of the debtor or of a relative" from "attachment, garnishment, or sale on any final process issued from any court," contravene article I, section 12 of the Minnesota Constitution as applied in the case of general damages and future special damages awarded to a debtor for bodily injury?

We answer the question in the negative.

In an order filed October 9, 1990, the United States Bankruptcy Court for the District of Minnesota, Third Division, declared the exemption under Minn.Stat. § 550.37, subd. 22 (1990) unconstitutional. The parties stipulated to the following facts and procedural history for purposes of answering the certified question of law presented to this court.

On September 21, 1988, Mark and Robin Medill, husband and wife, filed a voluntary petition for relief under chapter 7 of the U.S. Bankruptcy Code. Although the petitioners originally claimed their exemptions under 11 U.S.C. § 522(d) (1988), they later changed their exemptions to those allowed under Minnesota law.

As a result of a 1984 automobile accident, Mrs. Medill claimed permanent brain damage, resulting in memory loss and complex visual discrimination defects. In addition, she claimed permanent damage to her right hip and right knee involving chondromalacia, which will require ongoing medical care. Finally, Mrs. Medill claimed disfiguring scars on her face and knee.

Under Minnesota law, "[r]ights of action for injuries to the person of the debtor" are exempt from "attachment, garnishment, or sale on any final process, issued from any court." Minn.Stat. § 550.37, subds. 1, 22 (1990). When the Medills changed their exemption status, they added an entry for right of action for injuries suffered as a result of the 1984 automobile accident. Mr. and Mrs. Medill claimed as exempt 100 percent of the right of action for those injuries.

On February 21, 1989, the bankruptcy trustee objected to this claim on the ground that it violated article 1, section 12 of the Minnesota Constitution. The trustee noted the pendency of Mrs. Medill's trial in state court. The trial had convened in late January and early February 1989. The jury's verdict, while not specifically addressing the type of injuries described above, found Mrs. Medill's general damages to be $67,500 and her special damages, for future medical care, to be $6,300. The jury found Mr. Medill's derivative damages, for loss of consortium, to be $3,000. The jury assessed the parties' comparative fault at 40 percent for Mrs. Medill and at 60 percent for the defendants. As a result, on March 15, 1989, a $44,280 judgment was entered in favor of Mrs. Medill, and a $1,860 judgment was entered in favor of Mr. Medill.

We now address the reasons for our answer.

Statutes are presumptively constitutional. *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989); *In re Tveten*, 402 N.W.2d 551, 556 (Minn.1987). This court's power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary. *Haggerty*, 448 N.W.2d at 364. Finally, the party challenging the constitutionality of a statute has the burden of demonstrating, beyond a reasonable doubt, a violation of some provision of the Minnesota Constitution. *Id.* (citing *McGuire v. C & L Restaurant, Inc.*, 346 N.W.2d 605, 611 (Minn.1984)).

The court has answered certified questions concerning the constitutionality of specific exemptions under Minn. Const. art. 1, § 12 twice in the last 4 years. *See In re Haggerty*, 448 N.W.2d 363 (Minn.1989); *In re Tveten*, 402 N.W.2d 551 (Minn.1987).

Article 1, section 12 provides in pertinent part:

A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law.

As precedent interpreting the constitutionality of other exemption provisions in Minn.Stat. § 550.37, the analyses undertaken in *Tveten* and *Haggerty* necessarily guide our decision in this case. However, because the constitutionality of a fundamentally distinct exemption is at issue here, consideration of the underlying bases of damages awards, bankruptcy discharge, and the concomitant exemptions therefrom is also necessary.

We held in *In re Tveten* that Minnesota's exemptions concerning annuities or similar plans or contracts purchased for cash from fraternal benefit associations were unconstitutional under article 1, section 12.[1] There, the debtor had converted significant amounts of non-exempt property into unmatured life insurance benefits and annuities issued by a fraternal benefit society shortly before filing a petition for voluntary bankruptcy. 402 N.W.2d at 553. All of the benefits and annuities were exempt from attachment or execution under Minn. Stat. §§ 550.37, subd. 11 and 64B.18 (1986). *Id.* at 553–54.

A coalition of creditors and the bankruptcy trustee challenged the exemptions because the statutes provided no limit on the amount or extent of exemption allowed. They argued that an unlimited exemption could never be construed as a "reasonable amount * * * determined by law" under Minn. Const. article 1, § 12. This court agreed and held that the "reasonable amount" language of the constitution is synonymous with "reasonable value," at least with respect to property "which is inherently value laden (*e.g.*, the property at issue here: annuities and life insurance)." *Id.* at 556. The court declared the statutes unconstitutional for failure "to provide an objective bench mark by which the 'reasonable amount' of property exemption may be ascertained." *Id.* at 558.

Significant for purposes of the instant case, the court in *Tveten* stated:

[I]t does not follow that just because the "reasonable amount" language of the constitution requires some value limitation, that it requires a specific value limit. For example, the section governing employee benefits only exempts those benefits "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." Minn. Stat. § 550.37, subd. 24 (1986). This type of limitation clearly passes constitutional scrutiny because *it requires a court to limit the size of the exemption based upon objective criteria.*

*Id.* (emphasis added).

Following the *Tveten* decision, three bankruptcy court decisions ruled other exemptions under Minn.Stat. § 550.37 unconstitutional for failing to provide either a dollar or other limitation. *See In re Netz*, 91 B.R. 503, 505 (Bankr.D.Minn.1988) (Minn.Stat. § 550.37, subd. 24 (1988)), exempting an unlimited value or amount of employee benefits under a stock bonus, pension, profit-sharing, annuity, individual retirement account or similar plan); *In re Bailey*, 84 B.R. 608 (Bankr.D.Minn.1988) (past special damages portion of personal injury right of action); *In re Hilary*, 76 B.R. 683 (Bankr.D.Minn.1987) (sustaining creditor's objection to exemption for family musical instruments under Minn.Stat. § 550.37, subd. 2 (1990)).

*In re Bailey* is the most significant of the post-*Tveten* decisions for present purposes because it involved the same exemption now before this court in this case. In *Bailey*, the debtor claimed exemption of a right of action for personal injury damages arising out of an automobile accident. 84 B.R. at 609. The trustee challenged the exemption under article 1, section 12 and the *Tveten* decision. The bankruptcy court ruled the exemption constitutionally valid

---

1. The court was asked to address four certified questions in *In re Tveten.* Only the last concerned the constitutionality of the exemption under Minn. Const. art. 1, § 12 although the court also invalidated the provisions under Minn. Const. art. 12, § 1.

as applied to the general damage award, but infirm as applied to the award of past special damages. *Id.* at 612.

In upholding the validity of the exemption as applied to general damages, the bankruptcy court refused to apply strictly the analysis set forth in *Tveten.* Simply put, the *Bailey* court refused to apply the same analysis to "property in the nature of a debtor's person" as that applied to "property in the nature of annuities, unmatured life insurance, or other similar monetary and financial accounts of a debtor." *Id.* In other words, because the general damages portion of a right of action for personal injuries represents the monetary restoration of the physically and mentally damaged person, claims for general damages can never constitute an unreasonable amount of property for purposes of exemption. Thus, "[w]hatever value a debtor's person has, it is a reasonable amount for purposes of exemption and satisfaction of Minn. Const. art. I, sec. 12." *Id.*

However, the bankruptcy court held that the same analysis does not apply to the past special damages portion of a right of action for personal injury. "Property such as accounts reimbursable for actual medical costs, actual lost wages, nonmedical costs, and property lost or damaged, as those accounts exist at filing, fall within the *Tveten* rationale and analysis." *Id.* at 611. Because past special damages reimburse an individual for expenses that will ordinarily be discharged in bankruptcy, exemption of those proceeds would represent a windfall to the debtor. Accordingly, the court upheld the trustee's objection to that portion of the exemption relating to the special damages claim. *Id.* at 612.

Finally, *In re Haggerty* also involved the validity of a claimed exemption [2] under article 1, section 12. There, we upheld the continued recognition of the homestead exemption despite its lack of a value-based limit. 448 N.W.2d at 366. In addressing the limits required by article 1, section 12, we indicated that "an exemption with a dollar, an objective, or a statutory 'to the extent reasonably necessary' limit is a

proper legislative determination of reasonableness." *Id.* Accordingly, the court concluded that "area (or quantity for tangible property) limits are objective criteria limiting the homestead exemption to a reasonable amount." *Id.*

Under the analyses in *Tveten* and *Haggerty,* we must determine here whether there is an objective measure which limits the amount or extent of the personal injury right of action exemption since there is no dollar limit or "to the extent reasonably necessary" limiting language on the face of the provision. The trustee argues that the case is "incredibly simple" because there is no language on the face of the statute purporting to limit the exemption. The state and debtors argue that the judicial determination of general damages in a personal injury action is based on objective criteria; therefore, the amount of the exemption is reasonable and "determined by law" under article 1, section 12. We think that the latter interpretation is reasonable and that the trustee has failed to meet his burden of proving beyond a reasonable doubt that the provision is unconstitutional.

■ The bankruptcy trustee argues that only the legislature may determine what a "reasonable amount" is for purposes of a property exemption. He maintains that the "reasonableness" limitations on the exemption must be express, must be on the face of the legislation, and may not be "implied" or "inherent." Therefore, he concludes, subdivision 22 is unconstitutional on its face. In agreeing with this analysis, the bankruptcy court in this case noted that article 1, section 12 "functions first to create a governmental power, and only then to limit it. It empowers the Minnesota Legislature to enact exemption laws in derogation of the common law, and then mandates the exercise of that power." *In re Medill,* 119 B.R. 685, 690 (Bankr.D.Minn. 1990). Contrary to the bankruptcy court's assertion, however, it is not clear that the constitution's framers contemplated that "*only* the Legislature would have the power to 'determine ... by law' the nature and

---

**2.** Minn.Stat. §§ 510.01–.02 (1990).

amount of property exemptions." *Id.* Nor is it clear that the amount of the exemption must appear on the face of the legislation. *Id.* at 691.

To the extent the constitutional debates may be used to ascertain the intent of the framers' "reasonable amount" language,[3] we do not believe that the legislature must incorporate an external reference, setting the "reasonable amount" criteria, on the face of the legislation. Of course, it is the legislature's role to designate not only the nature of property exemption, but also the means by which to limit that exemption. Here, we believe that there is, in fact, a means by which the personal injury right of action exemption is limited. The legislature may assign to the judicial process the role of determining a "reasonable amount" of a personal injury right of action exemption. We have stated:

> Although the discretion to determine when and upon whom a law shall take effect may not be delegated, the legislature may confer * * * a discretionary power to ascertain, *under and pursuant to the law,* some fact or circumstance upon which the law by its own terms makes, or intends to make, its own action depend. The power to ascertain facts, which automatically brings a law into operation by virtue of its own terms, is not the power to pass, modify, or annul a law.

*Lee v. Delmont,* 228 Minn. 101, 112, 36 N.W.2d 530, 538 (1949) (emphasis in original). Thus, the legislature may properly delegate the discretion to determine a reasonable amount of a personal injury award.

Moreover, given the nature of the compensation for personal injuries and the resolution of personal injury actions, we think that there is sufficient criteria to limit the exemption in this case. The "reasonable value" of a bodily injury recovery is limited by the function of general damages, which give an injured party the monetary equivalent of the harm sustained. *Krueger v. Henschke,* 210 Minn. 307, 309, 298 N.W. 44, 45 (1941) (injured party entitled to "a fair

estimate of the suffering and physical injuries sustained"). An exemption for a personal injury right of action is the functional equivalent of an exemption limited "to the extent reasonably necessary" because of the inherent judicial limitations on the size of a compensatory damage award. Indeed, we have stated that, " '[u]nder a general allegation of damage the plaintiff may prove and recover those damages which naturally and necessarily result from the act complained of for the law implies they will proceed from it.' " *Smith v. Altier,* 184 Minn. 299, 300, 238 N.W. 479, 479 (1931) (quoting Sutherland on Damages § 418 (4th ed.). Under the language in *Tveten,* the inherent limitation passes constitutional scrutiny because "it requires a court to limit the size of the exemption based upon objective criteria." 402 N.W.2d at 558.

■ Here, the resolution of the Medills' personal injury action involved a judicial determination of an amount that reasonably compensated them for their injuries. The Medills' recovery was reasonably limited by a jury's determination of damages, which was then approved by a court. Contrary to the trustee's argument, we believe that the limits on out-of-court settlements are similarly reasonable. First, unless a statute is inherently unconstitutional, "its validity must stand or fall upon the record before the court and not upon assumptions this court might [otherwise] make * * *." *Grobe v. Oak Center Creamery Co.,* 262 Minn. 60, 63, 113 N.W.2d 458, 460 (1962). Moreover, even in the case of an out-of-court settlement, the "inherent" limitation on the right of action still exists; the amount of a settlement is limited to or by the extent of injury, and no party will agree to an "unreasonable" settlement.

■ The trustee vigorously argues that the court must go considerably beyond the plain language of the statute and rules of statutory construction to impose the required constitutional limit on the exemption provision at issue here. However:

**3.** *See Taylor v. Taylor,* 10 Minn. 107 (Gil. 81, 99) (1865) ("[W]e think such debates should not influence a court in expounding a constitution in any case.").

The constitutionality of a statute cannot in every instance be determined by a mere comparison of its provisions with the applicable provisions of the constitution. A statute may be constitutional and valid as applied to one set of facts and invalid in its application to another. *Grobe,* 262 Minn. at 62, 113 N.W.2d at 460. Thus, unless we find the exemption unconstitutional on its face, it must be unconstitutional as applied to the facts of the instant case in order to be stricken.

The difficulty of resolving the issue of whether only the legislature may determine what is a "reasonable amount," and whether it must do so on the face of the statute, is the nature of the personal injury right of action. As compensation designed to "make a person whole," subdivision 22 shares little in common (other than its "property" status) with either the fraternal benefits exemption in *Tveten* or the homestead exemption in *Haggerty.* The personal injury right of action appears to warrant a distinct analysis: Whereas the legislature can easily define a value or quantity as a "reasonable amount" with respect to "monetary and other accounts" and real property, it would be impossible and ludicrous to attempt to put a similar value on the debtor's person unless all personal injury rights of action exemptions were limited to a specific dollar amount.

Moreover, given the number of other subdivisions having an express dollar or other type of limit under Minn.Stat. § 550.-37, it is noteworthy that subdivision 22 has none. This lends support to the analysis that the inherent judicial limitations on a personal injury award for general damages were intended to provide the "reasonableness" limits on the exemption.

Finally, the trustee argues vehemently that, even if there is an inherent limit in subdivision 22, that limit does not differentiate among the funds that qualify for exemption. He concludes that any payment emanating in any fashion from or having any nexus to a personal injury cause of action fits within the statute's ambit. However, this argument goes too far. The certified question addressed subdivision 22 as applied to general and future special damages awards. We must limit our discussion to the constitutionality of the statute as applied to this set of facts, as required by *Grobe.* Nevertheless, while we need not decide whether special damages incurred prior to judgment or punitive damages are to be exempt in order to decide the question certified to us, we feel compelled to state that the bankruptcy court's analysis in *Bailey* appears reasonable and is likely to be applied here in future cases. Finally, we point out that punitive damages are not in the nature of compensatory damages and thus are not exempt from creditors.

The goal of bankruptcy relief is to give debtors a fresh start in their financial affairs. *Haggerty,* 448 N.W.2d at 367. Exemption provisions protect a debtor's fundamental needs by limiting the assets available for distribution to creditors. *Id.* This court has stated:

> The humane and enlightened purpose of an exemption is to protect a debtor and his family against absolute want by allowing them out of his property some reasonable means of support and education and the maintenance of the decencies and proprieties of life. The legislative purpose was to adapt the exemptions granted to the circumstances and needs of different classes of debtors.

*Poznanovic v. Maki,* 209 Minn. 379, 382, 296 N.W. 415, 417 (1941).

These policies apply with even more force to the personal injury right of action exemption because it deals not so much with the debtor's property, but with the debtor's human capital. Bankruptcy law protects an individual's human capital by putting it (in the form of earnings) beyond the reach of creditors. Jackson, *The Fresh–Start Policy in Bankruptcy Law,* 98 Harv.L.Rev. 1393, 1397 (1985). Moreover, "[o]f the various forms of wealth, human capital is not only the least diversifiable, but also has the most direct bearing on the future well-being of the individual and the people who depend on him." *Id.* at 1432. The debtor who suffers serious personal injury is deprived of using his or her human capital in getting a fresh start.

As an example, one person may be rendered a quadriplegic by an accident and require $1,000,000 or more of support for the rest of that person's life while another may only be partially injured and return to normal livelihood. The result of the damages is the same even though in different amounts—an attempt to render that person whole. We can find no reason why the creditor should be able to attach a structured settlement any more than a homestead. To allow it is to place the burden on the tax-paying public while the creditors benefit from the award. In *Tveten,* the debtor manipulated the claimed exemption. It is not reasonable to assume that a debtor deliberately would sustain injuries in order to experience an exempt recovery award. We find this case more akin to *Haggerty* than *Tveten.* The *Haggerty* case all but mandates our finding and decision in this case. Here, the social policy to exempt the recovery is even stronger.

We thus find that Minn.Stat. § 550.37, subd. 22 is not unconstitutional on its face and that the language used does not contain within it inadequate limitations on the use of the exemption. The question posed to us by the United States District Court for the District of Minnesota is therefore answered in the negative.