**In re Mary REILAND, Debtor.**

**No. 05–37729.**

United States Bankruptcy Court, D. Minnesota.

Nov. 1, 2007.

Kenneth Corey–Edstrom, Larkin Hoffman Daly and Lingren Ltd., Bloomington, MN, for Debtor.

Chad A. Kelsch, Leonard O'Brien Spencer Gale Sayre, Minneapolis, MN, for trustee.

### ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the Court for hearing on the Trustee's objection to the Debtor's claim of exemption in certain rights under a private policy of disability insurance, and in certain funds on bank deposit. Trustee Patti J. Sullivan appeared in person and by her attorney, Chad A. Kelsch. The Debtor appeared by her attorney, Kenneth Corey–Edstrom. The State of Minnesota appeared by Paige M. Fitzgerald, Assistant Attorney General. The following order is based upon the parties' stipulation of facts, the moving and responsive documents, and the arguments of counsel.

### I. The Constitutional Issue.

Article I, Section 12 of the Minnesota Constitution states, in pertinent part,

> A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law.

Twenty years ago, this provision was invoked in litigation that had arisen out of a group of bankruptcy cases in this court. The result was an appellate opinion that invalidated a Minnesota state exemption statute because its text did not "provide for any limitation at all," the first such decision in nearly a century. *In re Tveten,* 402 N.W.2d 551 (Minn.1987). Over the following years, trustees in bankruptcy (and at least one private creditor) have cited *Tveten* to challenge debtors' use of a number of other Minnesota exemption statutes. This has resulted in an extensive body of published jurisprudence. *See In re Hilary,* 76 B.R. 683 (Bankr.D.Minn. 1987); *In re Bailey,* 84 B.R. 608 (Bankr. D.Minn.1988); *In re Netz,* 91 B.R. 503 (Bankr.D.Minn.1988); *In re Haggerty,* 448 N.W.2d 363 (Minn.1989); *In re Barlage,* 121 B.R. 352 (Bankr.D.Minn.1990); *In re McKeag,* 111 B.R. 815 (Bankr.D.Minn. 1990); *In re Medill,* 119 B.R. 685 (Bankr. D.Minn.1990), question certified on appeal answered, *Medill v. State,* 477 N.W.2d 703 (Minn.1991); *Estate of Jones by Blume v. Kvamme,* 529 N.W.2d 335 (Minn.1995). By the turn of the millennium, one would have thought that creditor-oriented constituencies had called every possible corner of the Minnesota exemption statutes to

task under this theory. But one more has emerged.

The Debtor in this Chapter 7 case filed for bankruptcy on October 4, 2005. On that date, she held an asset that she described as "Claim for Disability Insurance policy against Mass Mutual Insurance Co." on her Schedule B. In her Schedule C, she claimed her interest in this property as exempt. She cited Minn.Stat. § 550.39 as her authority. That statute provides:

> The net amount payable to any insured or to any beneficiary under any policy of accident or disability insurance or under accident or disability clauses attached to any policy of life insurance shall be exempt and free and clear from the claims of all creditors of such insured or such beneficiary and from all legal and judicial processes of execution, attachment, garnishment, or otherwise.

The Trustee timely filed an objection to this claim of exemption and certain others. The matter was set for an evidentiary hearing. The final submission of the issues was delayed due to a reassignment of presiding judge, the Court's certification to the Attorney General of Minnesota pursuant to 28 U.S.C. § 2403(b), and the establishment of the parties' positions after the State of Minnesota intervened in the litigation. The issue of state constitutional law posed by the Trustee's objection is now before the Court. Development of evidence is not required for its resolution; no dispute of fact is posed.

■ The theory of the Trustee's objection is that "[b]ecause Minn.Stat. § 550.39 is not limited to a reasonable amount of property, it violates Article I, § 12 of the Minnesota Constitution" and hence has no force and effect. More specifically, she states that the statute is infirm because it "does not contain a dollar limitation, nor does it contain some other limitation, based on objective criteria."

This frames up the issue, though it does not go far enough into the governing rule of decision. In its most recent application of the constitutional provision to an exemption statute, the Minnesota Supreme Court

> ... defined "reasonable amount" in the following manner: If an exemption has no limit of any kind, then it is unconstitutional. On the other hand, an exemption with a dollar, an objective, or a statutory "to the extent reasonably necessary" limit is a proper legislative determination of reasonableness.

*Estate of Jones by Blume v. Kvamme,* 529 N.W.2d at 337 (citing *In re Haggerty,* 448 N.W.2d at 366). An exemption statute manifests the constitutionally-mandated limitation with the most certainty by bearing it on its face—"determine[d] by law" beyond peradventure. MARY JANE MORRISON, THE MINNESOTA STATE CONSTITUTION: A REFERENCE GUIDE 106 (2002) ("Where the exempt property has a market, the legislature ordinarily must specify in the statute the 'reasonable value' of the exemption. Even then, that specification does not need to be a specific dollar amount or value limit, as long as it states an objective means for limiting the exemption to a reasonable amount (citation omitted).") *Cf. How v. How,* 59 Minn. 415, 61 N.W. 456, 457 (1894) (holding that statutory exemption for "money or other benefit ... to be paid, provided or rendered by any" benevolent association or society violated Article I, Section 12, because on face of statute "there [was] no certain or proper measure of any kind"; contrasting that provision with statute "limiting the homestead exemption by area alone," in facial language that had been held to meet constitutional muster in two separate opinions).

However, the Minnesota Supreme Court has upheld the constitutionality of an exemption statute that lacked language of

limitation in its own text. It did so on the ground that common law, entirely extrinsic to the exemption statute itself, could be a source of limitation cognizable under Article I, Section 12, and that the availability of judicial application satisfied the constitutional mandate. *Medill v. State* concerned Minn.Stat. § 550.37, Subd. 22, which provided an exemption for "[r]ights of action for injuries to the person of the debtor or of a relative" but did not recite a dollar-figure or other descriptive limitation on its face. The *Medill* court held that this provision was constitutional because the Minnesota common law of tort would apply to the claim itself, providing for an award of general damages only to the extent of giving "an injured party the monetary equivalent of the harm sustained." This then entailed "inherent judicial limitations on the size of a compensatory damage award," which would ensure that the value in the hands of the debtor was no more than a "reasonable amount." 477 N.W.2d at 707. The *Medill* court emphasized that a recovery after a personal injury trial is "reasonably limited by a jury's determination of damages, which [is] then approved by a court." 477 N.W.2d at 707. It observed that out-of-court settlements of personal injury rights of action are subjected to the same limits of the common law, in that the parties accept that law as the outer boundaries of any compromise: "the amount of a settlement is limited to or by the extent of injury, and no party will agree to an 'unreasonable' settlement." *Id.*

Here, as the Trustee notes, Minn.Stat. § 550.39 imposes no limitation on the value of exemptible property rights on its face, by way of a specified dollar-value or other defined characteristic, no "external objective criteria that act as a cap to the exemption." [1] In terms of theory, the Trustee's argument pretty much stops there; her counsel did acknowledge *Medill v. State*, but his effort to distinguish it was misdirected.[2] However, that is of no real moment; under the tenor of *Medill v. State*, the proponent of the exemption should bear the onus of rationalizing a source of limitation in extrinsic legal governance, once the facial lack of statutory language of limitation is established.

The State's [3] argument to that end is set out, up front, at the beginning of its responsive brief:

---

1. Such a facial limitation could take at least three different forms. There could be a specific dollar figure, to be applied to a total of future payments or the present value of an anticipated stream of them. There is the more general limitation used in other exemption statutes, protecting rights to future payment "to the extent [they are] reasonably necessary for the support of the debtor and any spouse or dependent of the debtor." This sort of provision was recognized as passing constitutional muster in *In re Tveten*, 402 N.W.2d at 558, and *In re Haggerty*, 448 N.W.2d at 366. *E.g.*, Minn.Stat. § 550.37, Subd. 24; 11 U.S.C. §§ 522(d)(10)(E), and 522(d)(11)(B)-(C) and (E). And there is the use of an established "floor," an amount of the periodic payment that would be entirely exempt, with either the full balance or a designated fraction of the remainder to be non-exempt. This is the structure of the exemption for earnings under Minnesota law. *See* Minn.Stat. §§ 571.992 and 550.37, Subd. 13.

2. The Trustee's counsel used an analogy-based argument to try to distinguish the internal character of the respective kinds of asset, as between the different statutes in question. As will be seen, under *Medill's* analysis the *inherent functional attributes* of the assets are not relevant; the constitutional text requires that the limitation have an extrinsic source *in law*.

3. The State and the Debtor both oppose the Trustee's objection, and their attorneys both submitted extensive briefs and supporting materials. By design or otherwise, there was a division of labor between them in their final and most extended submissions; the State focused on the constitutional issue (with the

... the very nature of the asset addressed in Minn.Stat. § 550.39, a disability insurance policy, provides objective criteria such that the income pursuant thereto is of a reasonable value.

As the State would have it, disability insurance policies, "in and of themselves," provide "objective criteria to determine the reasonable value" of the rights under them, as follows:

1. Objective criteria "are used to set disability income policy limits," in that:

    a. insurers do not issue coverage that pays more than 100% of an insured's earned income;

    b. generally, insurers issue coverage to pay only a fraction of an insured's net earned income, as an incentive to return to work; and

    c. policy limits (in this sense, the aggregate amount of a benefit payment) are capped for the class of occupation into which a particular insured falls by the nature of his or her job, and the limits for each class take into consideration the earning potential and hazards of the jobs in the class.

2. To receive benefits under a disability insurance policy, an insured individual must prove disabled status by satisfying specified criteria—under the Debtor's policy, for instance, by showing the existence of an incapacity due to injury or illness, that requires medical care, reduces the insured's ability to work, and causes a loss of earned income.

3. Disability insurance "shares in common with the right of action for personal injury, the element of replac-

ing lost earning potential," which makes the value of rights under such coverage per se reasonable, whatever that value is, under the rationale of *In re Bailey*, 84 B.R. at 610.

Contrary to the State's argument, *Medill v. State* does not identify the inherent "nature of the asset," *sui generis*, as the source of a limitation to satisfy the constitutional requirement. Rather, the *Medill* court held that a body of law, external to the asset in question there, furnished a limitation on its value, ultimately imposed through the processes of the courts. It said nothing about the "very nature of the asset," whether that be considered in terms of abstract qualities generally understood to apply to a type of asset, or in specific attributes set into an asset by its creator.

And the underlying notion, of an *"objective* measure," 477 N.W.2d at 706 (emphasis added), incorporating *"objective* criteria" generally applicable to a broad class of persons, *id.,* (emphasis added), is entirely consonant with the dictionary definition of "law":

... a binding custom or practice of a community: a rule or mode of conduct or action that is prescribed or formally recognized as binding by a supreme controlling authority or is made obligatory by a sanction (as an edict, decree, rescript, order, ordinance, statute, resolution, rule, judicial decision, or usage) made, recognized, or enforced by the controlling authority ...

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED 1279 (2002).

By stark contrast, for "objective criteria" the State points to features of the

---

Debtor summarily joining in the State's position), and the Debtor argued the statutory issue (which pertained only to funds on de-

posit that she said were the proceeds of benefit payments under the disability insurance).

Debtor's individual disability insurance policy, plus aspects of insurance industry practice and policy. In the case of the first, the "objective criteria" are a function of contract, a consensual agreement between private parties tailored to meet the parochial needs of each. The State does not point to any single policy feature as mandated by a controlling authority in any part of government.[4] As to the second, not a bit of it emanates from a controlling authority external to the insurance industry; it all is a matter of general business practice, prompted by considerations of risk management and actuarial prudence. The State makes no showing that any of the ostensible "limits" on initial eligibility for insurance, extent of coverage, or qualification to receive benefits, is mandated by statute, rule, or judicial decision. It might not be prudent or financially responsible for an insurer to contract to pay a disability benefit of greater than the insured's earned income, or in a fractional proportion of earned income greater than the actual reduction in income caused by the disabling condition. But it appears that an insurer could do so if it wished, setting premiums at an appropriate level, insofar as the law is concerned.

So *Medill* does not rescue the Minnesota exemption for rights under a disability insurance policy; there is neither an externally-imposed limitation via articulated rules of law, nor the ultimate backstop, a

regulation-after-the-fact when trial and appellate judges apply those rules. This asset is a creation of private contract; its value to the policy-holder and beneficiary is as large as the insurer and the policy-holder jointly care to make it in a particularized, case-by-case decision, and that is not restrained in any way by an external legal dictate. And though the industry that issues this asset is regulated by several levels of government, the State has not pointed to any aspect of that regulation that prohibits the creation of a product that has value to a beneficiary greater than a specified amount or extent.

This exemption statute does not feature, or incorporate, a limitation to a "reasonable amount" that "shall be determined by law." Under it, the value of future payments to a beneficiary could be structured, and cumulate, without limit. *See Estate of Jones by Blume v. Kvamme*, 529 N.W.2d at 338.[5] Because that violates Article I, Section 12 of the Minnesota Constitution, *id.*, Minn.Stat. § 550.39 may not be enforced against the Trustee in this case; it does not enable the Debtor to retain the subject asset under 11 U.S.C. § 522(b)(2)(A). The Debtor's rights under her disability insurance policy with Mass Mutual Insurance Co. are property of her bankruptcy estate, subject to the Trustee's administration.

## II. The Statutory Issue.

When the Debtor filed for bankruptcy, she scheduled and claimed an exemption

---

4. So, as with any private contract, the only "limit" would be that which parties would create for each transaction, in an entirely subjective manner. The point that the Minnesota Supreme Court made in *How v. How* comes out of a different frame of reference, but there is a certain resonance:

 In the present case, there is no limit but the total amount of insurance which can be obtained on the life of the insured from all such insurance companies doing business in the state. This may amount to millions. It is clear that the total aggregate of the

capacity or power of all these insurance companies to insure the life of one individual is no proper measure of the amount that shall be exempt, and no proper basis or principle by which to determine a proper or reasonable amount.

 61 N.W. at 457.

5. The policy at issue here pays the Debtor around $8,500.00 per month—not an "unlimited" sum, but a pretty handsome one by any measure.

for an asset described as "Anchor Bank Checking Account," identified by a specific account number. She gave a current market value and value of claimed exemption for this asset as "8,000.00" and again cited Minn.Stat. § 550.39 as the legal basis for an exemption. The Debtor states that these funds on deposit were entirely the proceeds of benefit payments under her disability insurance program.[6]

The Trustee objected to this claim of exemption as well, on the ground that the text of Minn.Stat. § 550.39 "does not provide an exemption for traceable funds in a bank account," or any other proceeds of disability insurance benefits; "[r]ather, the statute is couched in receipt of . . . future benefits by the language 'net amount payable.'"

The ruling on the constitutional issue moots this one, since the statute through which the Debtor claimed this asset as exempt is not enforceable. Nonetheless, a couple of observations are worth making—in case the issue reemerges in this case.

▪ Addressed in the abstract, and from the perspective of both grammar and legislative drafting, the Trustee's argument makes sense. The Minnesota legislature has created ancillary exemptions for various forms of proceeds of property that would be exempt in its own right. *See* Minn.Stat. §§ 550.37, Subd. 9 (all "money arising from any claim on account of the destruction of, or damage to, exempt property") and 20 (exemption of funds under specified other subdivisions of Minn.Stat. § 550.37 "shall not be affected by the subsequent deposit of the funds in a bank . . . if the funds are traceable to their exempt source"). Thus, the lack here of a similar provision relating to the proceeds of the underlying asset does bear on the issue at

bar. *Genin v. 1996 Mercury Marquis,* 622 N.W.2d 114, 118 (Minn.2001) (where section of statute contains particular provision, omission of same provision from a similar section is significant to show different legislative intent for the two sections). *See also In re Kukowski,* 356 B.R. 712, 716–717 (8th Cir. BAP 2006) (applying North Dakota law). Beyond that, the choice of verb form in the statute—"payable"—definitely has the sense of a future act or operation, rather than a past and accomplished act like the word "paid" would. This suggests a limitation of the protection to a right to receive future payment, not extending to funds already received by way of payment.

But, an outcome adverse to the Trustee probably is dictated by longstanding Minnesota case law authority, construing an early exemption statute that featured an operative verb of comparably future orientation. *First Nat'l Bank of Shakopee v. How,* 65 Minn. 187, 67 N.W. 994 (1896) (holding that phrase "to be provided or rendered" encompassed monies already paid to beneficiary of member of cooperative assessment association; "the intention of the statute was to exempt from execution the money in the hands of the beneficiary or donee," ". . . after it is received by the beneficiary").

## ORDER

On the memorandum of decision just made,

IT IS HEREBY ORDERED AND DETERMINED:

1. The Trustee's objection to the Debtor's claim of exemption in all of her rights in a policy of disability insurance issued by Mass Mutual Insurance Co. is sustained.

---

**6.** The Trustee's counsel does not concede that as a matter of fact, but he assumed for the sake of argument that they were traceable as such.

2. The asset described in Term 1 is property of the Debtor's bankruptcy estate, and is subject to administration by the Trustee in due course.